

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00037-CV

_____

DANNY WAYNE MARTIN, Appellant

V.

AMANDA JOANN PARRIS, Appellee

On Appeal from the 102nd Judicial District Court
Red River County, Texas
Trial Court No. CV01804

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Danny Wayne Martin appeals from a final protective order entered in favor of his ex-girlfriend Amanda JoAnn Parris after a finding of family violence. In his pro se appeal, Martin complains that the trial court erred in "dismiss[ing]" the public defender from representing him in the underlying civil proceeding. Martin alleges that lack of counsel forced him to violate his Fifth Amendment rights and that the Equal Protection Clause of the United States Constitution was violated because he was not "treated the same as those similarly situated." He also complains that the evidence was factually insufficient to support the issuance of the protective order, that the trial judge was biased, and that the trial court committed the following alleged errors: (1) failing to orally pronounce that family violence was likely to occur in the future; (2) holding Martin in contempt of court; (3) failing to limit the opposing party's questioning; and (4) admitting evidence where "there was no proper foundation." We affirm the trial court's judgment.

## I. Expiration of the Protective Order Does Not Render this Appeal Moot

Appellate courts decide only those issues in which a controversy exists. *Camarena v. Tex. Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). The final protective order in this case expired by its own terms on August 12, 2010. We must first address whether the expiration of the protective order has rendered this case moot before we examine the merits of Martin's claim. *Clements v. Haskovec*, 251 S.W.3d 79, 83 (Tex. App.—Corpus Christi 2008, no pet.); *State for the*

2

*Protection of Cockerham v. Cockerham*, 218 S.W.3d 298, 302 (Tex. App.—Texarkana 2007, no pet.).

"The general rule is that a case becomes moot, and thus unreviewable, when it appears that a party seeks to obtain relief on some alleged controversy when in reality none exists." *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 822 (Tex. App.—Fort Worth 2007, no pet.) (citing *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001)); *Cockerham*, 218 S.W.3d at 301. Texas law does recognize a "collateral consequences" exception to the mootness doctrine. *Fed. Deposit Ins. Corp. v. Nueces County*, 886 S.W.2d 766, 767 (Tex. 1994); *Cockerham*, 218 S.W.3d at 302. The "collateral consequences" exception is only invoked under "narrow circumstances when vacating the underlying judgment cannot cure adverse consequences suffered by" the appellant. *Marshall v. Housing Auth. of City of San Antonio*, 198 S.W.3d 782, 789 (Tex. 2006). Such narrow circumstances exist when "as a result of the judgment's entry (1) concrete disadvantages or disabilities have in fact occurred, are imminently threatened to occur, or are imposed as a matter of law; and (2) the concrete disadvantages and disabilities will persist even after the judgment is vacated." *Id.*; *see Gen. Land Office of the State of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990) (noting collateral consequences exception is invoked only when prejudicial events occurred whose effects will continue to stigmatize after dismissal of case as moot).

"Appeals of expired protective orders issued for family violence often fall into this 'collateral consequences' exception because although such orders may ultimately expire, the stigma attached to them generally does not." *Clements*, 251 S.W.3d at 84; *see Schaban-Maurer*, 238 S.W.3d at 822–23; *Cockerham*, 218 S.W.3d at 303. This stigma is not only a social burden; there are also "attendant legal consequences to being the subject of such a protective order." *Schaban-Maurer*, 238 S.W.3d at 822–23 (noting courts consider a history of domestic violence when judging child conservatorship) (citing TEX. FAM. CODE ANN. § 153.004(f) (Vernon 2008)). For example, the Texas Family Code requires that information in a protective order be entered into the state-wide law information system "where it presumably remains for various purposes." *Amir-Sharif v. Hawkins*, 246 S.W.3d 267, 270 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.); *see* TEX. FAM. CODE ANN. § 86.0011 (Vernon 2008). In *Cockerham*, we noted there could be other possible legal consequences that could occur should the appellant be convicted of other criminal acts. *Cockerham*, 218 S.W.3d at 303.[1] Thus, we find that the collateral consequences exception to the mootness doctrine applies in this case. Because the expiration of the protective order does not render this appeal moot, we may consider the merits of Martin's claims. *Id*. at 303–04.

## II.     Sufficient Evidence Supported the Trial Court's Judgment

Martin complains the court's judgment was "contrary to the evidence and findings at trial."

---

[1]Further, the August 20, 2008, protective order in this case ordered that Martin's license to carry a concealed handgun be suspended due to the trial court's finding of family violence. TEX. GOV'T CODE ANN. § 411.187(a)(5) (Vernon Supp. 2010). The normal expiration period for a concealed handgun license is "the first birthday of the license holder occurring after the fourth anniversary of the date of issuance," a date which has not passed. TEX. GOV'T CODE ANN. § 411.183 (Vernon Supp. 2010).

4

*A.      Standard of Review*

Because a protective order provides injunctive relief, we apply the standard of review that is applied when reviewing injunctions. *In re Epperson*, 213 S.W.3d 541, 542 (Tex. App.—Texarkana 2007, no pet.). Thus, we review the trial court's grant of the protective order against Martin for abuse of discretion. *Id.* at 543 (citing *Operation Rescue-Nat'l v. Planned Parenthood of Houston & S.E. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998)). "A trial court abuses its discretion if it acts without reference to any guiding rules and principles or reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

*B.      Factual Background*

Martin was the father of one of Parris' two young children. He was incarcerated prior to the incidence of alleged family violence that prompted Parris' petition for a protective order. Parris testified at the hearing that Martin wrote threatening letters to her while in prison. Martin moved to Paris, Texas, after his release.

Parris testified Martin "just walked into" her house one afternoon "drinking a Budweiser beer . . . . And he told me, he said, 'You've got two choices . . . . You can either pack the kids up and come with me to Paris for a couple of weekends -- or for a couple of days, or you can die right here.'" Parris refused to leave with the kids. She testified Martin "just yanked me up by the neck and my hair and took me in the kitchen and slammed me up against the kitchen counter and got a

knife." Martin held the knife to Parris' throat, but allowed her to attend to her younger daughter when she started crying. Parris comforted her child while begging Martin to leave. Again, Martin held the knife to Parris' throat. The act was witnessed by Parris' eldest daughter. With both children by her side, Parris "told him to stop," insisted, "I'm not going anywhere with you," and begged Martin to leave.

At some point when Martin turned to make a telephone call, Parris testified she "just took off running out the door, screaming for help. And he came out, running after me, and he yanked me by the back of my hair and he dragged me back into the house." Martin had noticed that there were two witnesses outside, and assumed they would call the police. He slapped Parris and instructed her and the children to hide in the back room of the house. The police arrived shortly thereafter. Parris testified she "was wanting to scream for help but he was telling me no, to be quiet, and I was just holding my kids close to me so that nothing would happen to them." After the officers left, Martin said he would let Parris live if she did not call the police, but would kill her if she did.

As far as the nature of their prior relationship, Parris testified Martin "would either get drunk and I would always go find him, try to bring him home. And then when he would get home, he would either throw me around, call me a stupid b****, or he would slap me. He would pull me by my hair. He would make me have sex with him when I didn't want to."

Martin testified on his own behalf. He claimed that he witnessed Parris molesting his daughter, went to call the police, and that Parris "come at me with a knife." He admitted to previous abuse, but stated he would only slap her after she slapped him first.

After hearing the evidence, the trial court found

> that the respondent in this matter, Mr. Danny Martin, has in fact engaged in family violence on the date in question, as well as prior occasions, and a family relationship has existed as provided in the family code that is protected against violence. Having found that there have been acts of family violence perpetrated against the movant, Amanda Parris, this Court now hereby enters a protective order in favor of Ms. Parris against Mr. Martin at whichever time he may be released from custody.

### C.    Analysis

A trial court shall render a protective order "if the court finds that family violence has occurred and is likely to occur in the future." TEX. FAM. CODE ANN. § 81.001 (Vernon 2008). "Family violence" includes "dating violence," which means:

> an act by an individual that is against another individual with whom that person has or has had a dating relationship and that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the individual in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

TEX. FAM. CODE ANN. §§ 71.004(3), 71.0021(a) (Vernon 2008).

Martin and Parris both testified that they previously engaged in a dating relationship. After Parris' testimony, Martin's presentation of contrary evidence came in the form of denials of actions alleged to have been committed by him, coupled with allegations that Parris was molesting

7

his daughter.[2]   As finder of fact, the trial court was free to believe Parris' testimony and disbelieve Martin's denials.   *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).   We conclude that the trial court was within its discretion, based on Parris' testimony, to find Martin's actions in slamming Parris into the kitchen counter, slapping her, and dragging her by the hair constituted actions intended to result in physical harm, bodily injury, and/or assault.   According to Parris, Martin also held a knife to her throat and threatened to kill her twice—first, if she did not leave with him and the children, and second, if she informed the police of his actions.   The trial court could conclude these acts and threats reasonably placed Parris in fear of imminent physical harm, bodily injury, and/or assault.   We find the evidence legally and factually sufficient to support the trial court's finding that family violence occurred.

Next, we have stated, "Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order."   *Epperson*, 213 S.W.3d at 544.   Parris testified to a history of verbal, physical, and sexual abuse by Martin during their past relationship, as well as threats received before and after Martin's incarceration.   Martin admitted to slapping Parris during their dating relationship, though apparently in retaliation.   Coupled with the two threats that Martin would kill Parris, it was reasonable for the trial court to conclude that Martin would likely commit, or would threaten to commit acts constituting family violence.   *See id.*   We find the evidence legally and factually

---

[2]Martin's allegation that Parris molested his child was referred to Child Protective Services.

sufficient to support the trial court's discretionary finding that family violence was likely to occur in the future.   Martin's first point of error is overruled.

**III.    Appealability and Preservation Issues**

*A.        Martin Did Not Preserve Complaint of Allegedly Omitted Statutory Findings*

Although the written protective order specified a finding that family violence was likely to occur in the future, Martin claims that the trial court erred in failing to make "the requisite finding at the close of the hearing." *See* TEX. FAM. CODE ANN. § 85.001(a) (Vernon 2008).   Judicial economy requires that a trial court have the opportunity to correct an error before an appeal proceeds. *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999).   "As a prerequisite to presenting a complaint for appellate review, the record must show that:   (1) the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1.   By failing to object or otherwise raise this issue below, Martin failed to preserve this error for our review. *See Melton v. Tex. Dep't of Family & Protective Servs.*, No. 03-08-00168-CV, 2010 WL 668917, at *2 (Tex. App.—Austin Feb. 25, 2010, no pet.) (mem. op.).

Nevertheless, prior to the close of the hearing, the court stated, "Under the terms of that protective order he is to stay five hundred feet away from her, and he is not going to have access to the children who are also a part of this sui[t], as this Court feels that Mr. Martin's conduct will constitute an endangerment to the children as well as Ms. Parris."   Were this point of error

9

preserved, we would construe the court's statement as a finding that family violence would likely occur in the future. This point of error is overruled.

### B. Contempt Order Is Not Appealable

Martin's brief summarily states that the trial court "acted without any guiding rules or principles." Our review of the reporter's record citation provided reveals that Martin is complaining of an order of contempt entered by the trial court.

During Martin's cross-examination, Martin made relevance objections instead of answering questions asked. The trial court attempted to remedy the situation in the following manner:

> THE COURT: Sir, you answer the questions that are propounded to you.
>
> A   Well, you be honorable.
>
> THE COURT: I beg your pardon?
>
> A   I'm asking you to please be honorable.
>
> THE COURT: Sir, you're in contempt. Six months in jail. That's the first thing. Continue.

The court explained:

> Mr. Martin made a comment to the Court which the Court deems to be very inappropriate, which to the Court seems to be an attack upon the integrity of the Court and the judiciary. This Court is of the opinion that that constituted an act of direct contempt. The Court hereby adjudicated him guilty of direct contempt of this Court by the responses that have been entered to it or the comments that were

10

made by Mr. Martin to the Court. This Court assessed the punishment at six months' confinement in the Red River County jail.

In his brief, Martin argues "that his comment was not an attack as much as it was the 'truth', nor does a citizen need put up with such foulness in its judicial system, nor the trial judge in question."

We broadly interpret Martin's brief as an appeal of the order of contempt. "Decisions in contempt proceedings cannot be reviewed through a direct appeal." *Hatton v. Griar*, No. 4-09-00630-CV, 2011 WL 175501, at *2 (Tex. App.—Houston [14th Dist.] Jan. 20, 2011, no pet. h.) (mem. op.); *see Ex parte Williams*, 690 S.W.2d 243 n.1 (Tex. 1985); *Pandozy v. Beaty*, 254 S.W.3d 613, 616 (Tex. App.—Texarkana 2008, no pet.). "Contempt orders may only be reviewed through a habeas corpus proceeding or by writ of mandamus." *Hatton*, 2011 WL 175501, at *2 (citing *Metzger v. Sebek*, 892 S.W.2d 20, 55 (Tex. App.—Houston [1st Dist.] 1994, writ denied)). Accordingly, no attempted appeal from the contempt order in this case will be considered.

### C.      *Issue of Bias Was Not Preserved*

Martin complains that the trial judge's findings were the result "of passion, prejudice, and improper motive" and accuses the judge of "bias and prejudice against" Martin and "deep seated favortism [sic] towards the State's attorney." A complaint that a trial judge was biased must generally be preserved in the trial court. *See* TEX. R. APP. P. 33.1(a); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). "Preservation is unnecessary only if the 'comment cannot be

11

rendered harmless by proper instruction.'" *In re M.E.C.*, 66 S.W.3d 449, 459 (Tex. App.—Waco 2001, no pet.) (citing *Francis*, 46 S.W.3d at 241).

Martin bears the burden to "explain how any comments made by the trial judge were incurable or would excuse" the "failure to preserve error." *Francis*, 46 S.W.3d at 241. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id.* at 556.

In support of this point of error, Martin cites to the order of contempt and the court's decisions overruling his relevance objections to questions involving his place of employment and address during his cross-examination. Review of the trial judge's remarks leads us to conclude they were aimed at explaining his decision to hold Martin in contempt of court. The judge's comment that "either the responses or the questions asked were not subject to objection" merely explained the judge's decisions to overrule Martin's relevance objections. Martin's brief does not adequately explain why the judge's efforts at courtroom administration were examples of "incurable" bias or prejudice such that he would be excused from preserving error. We find that because Martin did not raise this issue with the trial court, it is not preserved for our review.

12

*Watson v. Michael Haskins Photography, Inc.*, No. 10-05-00010-CV, 2005 WL 3148074, at *3 (Tex. App.—Waco Nov. 23, 2005, no pet.) (mem. op.).

Had the point been properly preserved, we would find the trial court's comments were not comments on the weight of the evidence, but were procedural explanations that were within the discretion vested in the trial court during the conduct of a trial. *Bott v. Bott*, 962 S.W.2d 626, 631 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

This point of error is overruled.

### D. Martin Did Not Seek Counsel

Martin complains that the trial court committed "fundamental error or 'plain error'" when it "dismissed"[3] his attorney. The record demonstrates Martin was indigent, that Dan Meehan, a public defender, was appointed to represent him on criminal charges arising from the incident, and that Meehan was present to address criminal matters also being heard at the same time as the hearing on the civil protective order. Prior to the civil hearing, the following exchange occurred:

> THE COURT: . . . . Mr. Meehan, were you here as the public defender in these other cases, sir?
>
> MR. MEEHAN: On Mr. Martin?
>
> THE COURT: Yes.
>
> MR. MEEHAN: I assume I am. Yes, sir.

---

[3]Because there is nothing in the record demonstrating Martin had an attorney-client relationship with any attorney with regard to the civil protective order, we find that any complaint regarding "dismiss[al]" of his attorney is without merit.

> THE COURT: All right, I have noted you as a public defender. As far as representation in a protective order, I don't think that you are obligated as the public defender.

In this case, the trial judge had the power to appoint counsel for Martin. TEX. GOV'T CODE ANN. § 24.016 (Vernon 2004)[4] ("A district judge may appoint counsel to attend to the cause of a party who makes an affidavit that he is too poor to employ counsel . . . ."). However, the record demonstrates Martin failed to request appointment of counsel to represent him in this civil matter.[5] Had Martin made such a request, we would review the trial court's denial for an abuse of discretion. *Hines v. Massey*, 79 S.W.3d 269, 272 (Tex. App.—Beaumont 2002, no pet.).[6] Because Martin did not request that counsel be appointed to represent him, he has failed to preserve this issue for our review. *Hull v. Davis*, 211 S.W.3d 461, 466 (Tex. App.—Houston [14th Dist.] 2006, no pet.).[7] This point of error is overruled.

---

[4]Martin argues that Section 81.007(a) of the Texas Family Code guarantees him right to counsel in this civil matter. That section does not apply. Section 81.007(a) states, "The county attorney or the criminal district attorney is the prosecuting attorney responsible for filing applications under this subtitle unless the district attorney assumes the responsibility by giving notice of that assumption to the county attorney." TEX. FAM. CODE ANN. § 81.007(a) (Vernon 2008).

[5]We distinguish cases cited by Martin which discuss appointment of counsel when faced with termination of parental rights or adoption issues. *Lassiter v. Dep't of Soc. Servs. of Durham County, N.C.*, 452 U.S. 18 (1981); *Stanley v. Illinois*, 405 U.S. 645 (1972); *Armstrong v. Manzo*, 380 U.S. 545 (1965); *May v. Anderson*, 345 U.S. 528 (1953).

[6]We distinguish the case of *Striedel v. Striedel*, 15 S.W.3d 163 (Tex. App.—Corpus Christi 2000, no pet.). In *Striedel*, our sister court found that the trial court should have considered appellant's request for counsel in a protective order proceeding which affected appellant's right to see his child. *Id.* at 167. In *Striedel*, appellant had preserved the issue by requesting an attorney to represent him. *Id.* at 165. Recognizing this fact, our sister court clarified "we note, however, that appellant made repeated attempts in the trial court to raise this issue, all to no avail. We do not mean to express here any belief that the right to counsel cannot be waived." *Id.* at 166 n.1.

[7]Martin argues that his point of error presents fundamental error that can be addressed for the first time on appeal. "Fundamental error in a civil case is rare, but occurs when the record shows that the court lacked jurisdiction or when the error directly and adversely affects the public interest as that interest is declared by the statutes and state

14

*E.* *Martin Failed to Preserve Equal Protection Argument*

Martin summarily alleges that the Equal Protection Clause of the United States Constitution was violated because he was not "treated the same as those similarly situated." His briefing reveals that he is not complaining of any error committed by the trial court with regard to the Equal Protection Clause. Rather, he cites to *Striedel*, and urges this Court to: find that the facts of this case are the same as *Striedel*, to hold that he was entitled counsel, and conclude that reversal is necessary because "Appellant has a right to equal protection of the laws." At a minimum, "[a] complaint on appeal must address specific errors" committed by the trial court. *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 889 (Tex. App.—Texarkana 2009, pet. denied). Because Martin's brief does not complain of any act by the trial court, this point of error is overruled.

*F.* *Martin Failed to Preserve Error Regarding Lack of Proper Foundation*

Martin claims that he "objected to the evidence because there was no proper foundation for its admission." His record citations demonstrate that while there was no such objection, the following objections occurred during Parris' direct examination:

> Q What kind of knife did he get?
>
> A A regular kitchen knife.

---

constitution." *Matter of J.G.*, 905 S.W.2d 676, 680 n.1 (Tex. App.—Texarkana 1995), *writ denied*, 916 S.W.2d 949 (Tex. 1995) (per curiam) (citing *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982)). The record demonstrates the trial court had jurisdiction of the matter, Martin does not address how his lack of counsel with respect to Parris' protective order adversely affected the public interest, and caselaw establishes this error is one that can be waived. *See Hull*, 211 S.W.3d at 466.

Q      How big was it?

. . . .

Q      Let the record reflect she's holding up approximately a six-inch blade . . . .

. . . .

THE COURT:   And, Mrs. Collins, the record needs to reflect that she is demonstrating approximately a six-inch blade.

MR. MARTIN:   Objection.   I don't see any knife here.

THE COURT:   Overruled, sir.

MR. MARTIN:   I don't see any evidence.

THE COURT:   Overruled . . . .

. . . .

Q      Has he committed acts of violence against you in the past?

A      Yes, he has.

MR. MARTIN:   Objection.   No evidence.

THE COURT:   Overruled.

During Parris' cross-examination, Martin lodged an objection that "there is no evidence whatsoever at this hearing, Your honor."   The remaining objections dealt with claims of Fifth Amendment privilege and relevance objections to questions regarding his place of employment and current and past addresses.

16

It is well-settled that an objection at trial that does not comport with the complaint raised on appeal preserves nothing for appellate review. *See* TEX. R. APP. P. 33.1(a); *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). Whereas his objections to the trial court were statements that in his opinion, Parris' testimony did not constitute evidence, that he was entitled to assert a Fifth Amendment privilege to questions regarding employment, and that information about his employment and address were irrelevant, his complaint on appeal deals with "want of such foundation."[8] We conclude that Martin's objections at trial do not comport with his point raised on appeal. Therefore, the point of error was not preserved, and it is overruled.

## IV.  Martin's Fifth Amendment Assertion of Privilege Was Not Made in Good Faith

It is well established that the Fifth Amendment privilege may be asserted in civil cases where a party reasonably believes his or her answers will be incriminating. *Tex. Dep't of Public Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995); *In re Suarez*, No. 14-08-00740-CV, 2008 WL 4310098, at *2 (Tex. App.—Houston [14th Dist.] Aug. 28, 2008, no pet.). "The trial court is to determine whether the assertion of the privilege is in good faith and is justifiable under the totality of the circumstances." *In re Commitment of Lowe*, 151 S.W.3d 739, 745 (Tex. App.—Beaumont 2004, pet. denied). A court can consider whether the privilege is being asserted in a bona fide fear of self-incrimination or merely to avoid discovery or to create delay. *Denton*, 897 S.W.2d at 763.

The record contains only one assertion of privilege to the following:

---

[8]There was no assertion that either Parris or Martin did not have personal knowledge of their testimony.

Q       Okay, and where did you say you were working, or did you say?

A       That's really nobody's business.

Q       Where you're working is nobody's business?

A       Yes, I work; but no, it ain't your business.

Q       Will you instruct the defendant -- or the respondent . . .

A       I claim the Fifth Amendment.

After the trial court overruled the assertion of privilege, Martin testified he was a self-employed roofer. Because we find that a belief that such an answer would be incriminating was unreasonable and unjustifiable, we conclude Martin was not entitled to refuse to answer the question based on an assertion of Fifth Amendment privilege. Further, under these circumstances, the trial court could find that the assertion was not made in good faith. This point of error is overruled.

## V.     Trial Court Did Not Abuse Discretion in Admitting Evidence

We apply an abuse of discretion standard to the question of whether a trial court erred in an evidentiary ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)). A trial court abuses its discretion when it rules without regard to any guiding rules or principles. *Id.* We must uphold the trial court's ruling if there is any legitimate basis for its ruling. *Id.*

Martin claims that the trial court "abused its discretion by failing to stop the prosecutor from asking irrelevant questions." We interpret Martin's argument as suggesting that the trial court erred in overruling his relevance objections when questioned about his place of employment and living arrangements. In her petition for a protective order, Parris asked the trial court to order that Martin be prevented from "going to or near" her residence and/or possible place of employment. Specifically, Parris requested that Martin be ordered to maintain a distance of 200 feet. Thus, the proximity of Martin's residence and place of employment were facts the trial court could have considered in determining the feasibility of the requirement to maintain a certain distance from Parris. We find that the trial court did not abuse its discretion in overruling Martin's relevance objections. Martin's last point of error is overruled.

**VI.**     **Conclusion**

We affirm the judgment of the trial court.


                          Jack Carter
                          Justice

Date Submitted:      February 17, 2011
Date Decided:         March 4, 2011