Ira Russell **CLEMENTS**, Jr., Appellant,

v.

Linda **HASKOVEC**, Appellee.

No. 13–04–063–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Jan. 17, 2008.

---

John M. Green, Bay City, for the appellant.

Linda Lee Haskovec, pro se.

Jill S. Cornelius, for The State of Texas.

Before Chief Justice VALDEZ and Justices YAÑEZ and BENAVIDES.

## OPINION

Opinion by Justice BENAVIDES.

In this case, we review the factual and legal sufficiency of the evidence supporting a now-expired family violence protective order. Although an expired order is ordinarily moot, this appeal is live under the "collateral consequences" exception to the mootness doctrine. *See In re Cummings,* 13 S.W.3d 472, 475 (Tex.App.-Corpus Christi 2000, no pet.). We conclude that the evidence before the county court was legally and factually sufficient to support the protective order. Therefore, we affirm the judgment.

### I. BACKGROUND

The subject of the protective order in this case is the appellant, Ira Russell Clements, Jr. In 2003, Ira lived in Bay City, Texas with his elderly wife, Helen Pearl Clements, who had been diagnosed with Alzheimer's disease. Ira and Helen had two daughters, Linda Haskovec and Clela Pausewang, who lived nearby.

In March 2003, at the Clements home, Ira and his daughter Linda had an argument about Helen's care and well-being; Linda believed that her father was behaving abusively towards her mother. Linda attempted to remove her mother from the home, but Ira prevented Linda from doing so and forced her to leave the house. Ira angrily warned Linda not to come back to

the Clements house again. After the incident, however, Ira telephoned Linda on multiple occasions and requested that she come back to the house. On those occasions, Ira wanted Linda to return to pacify Helen and to take her to Linda's home when she had become either ill or upset.

On November 26, 2003, Linda was caring for her mother at Linda's home while making Thanksgiving dinner preparations. Helen stated that she did not want to leave Linda's home because she feared returning to Ira. Linda also observed a bruise on her mother's arm, which appeared to be the result of a strike from someone's hand because the outline of a thumb and forefingers was visible on the bruise. Linda kept her mother at her home that evening.

The following day, November 27, 2003, Linda and her husband, Michael Haskovec, went to the Clements home with Helen to pick up some of Helen's personal items and to announce that Linda would be taking her mother away. Although Ira had once warned Linda to stay away from the home, she did not believe that her presence could be considered trespassing because Ira had called her back to the home on multiple occasions after the warning. Additionally, Linda presumed that she had her mother's consent to come to the house.

When Linda told her father why she had come to the Clements home, he became belligerent. He shouted at Linda, grabbed her hair, and drew his fist back as though threatening to hit her. Linda also claims that her mother attempted to sneak out of the house three times, but each time, Ira grabbed Helen's arm and pulled her back inside the home. Ira does not deny any of the accusations; he instead characterizes his behavior as justified to ward off a trespasser.

A sheriff's deputy, Dennis Bensfield, came to the Clements home to arrest Ira on December 2, 2003 in response to a sworn complaint Linda filed with the Precinct 6 Justice of the Peace. Upon arriving, the sheriff's deputy noticed Helen at the door, nervous and shaking. Helen told him that she feared for her life because Ira said that he would kill her. Ira was arrested and jailed for alleged assault.

Later that same day, the Precinct 6 Justice of the Peace issued an emergency protective order against Ira. The application for the order, signed by Linda, stated that Ira had committed "family violence ... involving serious bodily injury AND/OR an act in furtherance of stalking...." The court issued the protective order, and Ira appealed to Matagorda County Court.

Also on that day, the Matagorda County Attorney filed an application for a protective order against Ira on behalf of Helen, Linda, and her husband, Michael, in Matagorda County Court. When the county court held a hearing on January 22 on the Matagorda County application, Linda moved to non-suit the previous emergency protective order and the court granted the motion.

Considering only the new application filed by the county attorney, the court heard testimony from two members of the sheriff's department and both of Ira's daughters. Officer Robert Miles testified that when he came to investigate the November 27th disturbance, Ira admitted to grabbing Linda's hair and stated that he "should have beat the hell out of [Linda]." Officer Bensfield testified about Helen's comment that she feared for her life and her nervous and shaken demeanor when he came to the Clements residence to arrest Ira on Dec. 2nd.

Ira's daughters testified that during their childhood, Ira had been non-violent and peaceful, but over the past eight to ten months, his behavior had become increas-

ingly violent. Linda testified in specific terms about the physical confrontation she had with Ira on November 27, when she attempted to remove her mother from Ira's care. She also testified about recent verbal and physical altercations between Ira and his housekeeper and her mother's caretaker. Both daughters expressed specific concerns for their mother's safety. Clela, for example, testified that on one occasion, when her mother was away from Ira, her mother said that "she was scared and didn't want to go home" and that Ira "dragged her through the house."

Ira objected that the out-of-court statements purportedly made by Helen constituted hearsay, but the county court allowed the statements under the "excited utterance" exception to hearsay. *See* TEX.R. EVID. 803(2) (exempting "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" from the hearsay rule). Ira then attempted to discredit Helen's statements by introducing matters that pertained to an upcoming guardianship proceeding for Helen. Ira's attorney stated that his specific intent in introducing the guardianship matters was to demonstrate that Helen was mentally incompetent, and therefore, her out-of-court statements were not trustworthy. The court, however, did not allow Ira to present the evidence. Ira did not make an offer of proof on the evidence at that time.

At the conclusion of the hearing, the court found that a protective order against Ira was justified, and it issued an order stating that "family violence, as defined in § 71.004 of the Texas Family Code, has occurred" and that "family violence is likely to occur again in the future." The order prohibited Ira from going within 200 feet of or communicating with Helen, Linda, or Michael. Ira then filed a bill of excep-

tions, in which he complained about the county court's ruling prohibiting him from introducing evidence of Helen's mental incompetency.

Ira timely appealed the county court's decision to issue the order. The order expired exactly two years later on December 22, 2006, and Helen passed away during the pendency of the appeal.

## II. MOOTNESS

■ Although the issue of mootness has not been raised or briefed by either party, we must address whether the expiration of the protective order has rendered this case moot before we examine the merits of Ira's claim. *See Labrado v. County of El Paso,* 132 S.W.3d 581, 589 (Tex.App.-El Paso 2004, no pet.) (describing mootness as "a component of subject matter jurisdiction"); *see also Hatten v. Univ. Interscholastic League,* No. 13–06–313–CV, 2007 Tex.App. LEXIS 7795, at *4, 2007 WL 2811833, at *1–2 (Tex.App.-Corpus Christi Sept.27, 2007, no pet. h.) (mem. op.). In this case, the appeal is not moot due to the "collateral consequences" exception to the mootness doctrine. *See Cummings,* 13 S.W.3d at 475.

■ The doctrine of mootness "limits courts to deciding cases in which an actual controversy exists." *In re Salgado,* 53 S.W.3d 752, 757 (Tex.App.-El Paso 2001, orig. proceeding). "The general rule is that a case becomes moot, and thus unreviewable, when it appears that a party seeks to obtain relief on some alleged controversy when in reality none exists." *Schaban–Maurer v. Maurer–Schaban,* 238 S.W.3d 815, 822 (Tex.App.-Fort Worth Oct.11, 2007, no pet. h.) (citing *Williams v. Lara,* 52 S.W.3d 171, 184 (Tex.2001)). It would be a mere academic exercise for an appellate court to attempt to decide a moot case. *Salgado,* 53 S.W.3d at 757.

Texas law, however, does recognize a "collateral consequences" exception to the mootness doctrine. *Gen. Land Office of State of Tex. v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex.1990). The "collateral consequences" exception is applied when prejudicial events have occurred and the effects continue "to stigmatize individuals long after the judgment has ceased to operate." *Cummings,* 13 S.W.3d at 475. It is only invoked under narrow circumstances when vacating the underlying judgment cannot cure adverse consequences suffered by the appellant. *Marshall v. Housing Auth. of San Antonio,* 198 S.W.3d 782, 789 (Tex.2006).

Appeals of expired protective orders issued for family violence often fall into this "collateral consequences" exception because although such orders may ultimately expire, the stigma attached to them generally does not. *Schaban–Maurer,* 238 S.W.3d at 822–23; *Salgado,* 53 S.W.3d at 757; *Cummings,* 13 S.W.3d at 475. The effects of a family violence protective order continue to stigmatize individuals long after the date of expiration. *Schaban–Maurer,* 238 S.W.3d at 822–23. This stigma is not only a social burden; there are also "attendant legal consequences to being the subject of such a protective order." *Id.* at 822–23 (noting that the family code requires courts to consider a history of domestic violence when judging child conservatorship) (citing TEX. FAM.CODE ANN. § 153.004(f) (Vernon Supp.2006)).

The expiration of the protective order, therefore, does not render this appeal moot. *See id.* The very fact that the order was issued has a potential impact on Ira's legal rights, and thus, we are obligated to consider his appeal. *Id.*

### III. STANDARD OF REVIEW

The Fort Worth Court of Appeals recently observed that the courts of appeals are split on the proper standard of review applicable to appeals of protective orders. *Schaban–Maurer,* 238 S.W.3d at 823. Some courts review protective orders for legal and factual sufficiency of the evidence, *see id.,* while others review for abuse of discretion. *See id.* (citing *Thompson v. Thompson–O'Rear,* No. 06–03–00129–CV, 2004 Tex.App. LEXIS 5033, at *2, 2004 WL 1243080, at *1 (Tex.App.-Texarkana June 8, 2004, no pet.) (mem. op.)).

In a recent memorandum opinion, we relied on precedent from the First Court of Appeals in applying a legal and factual sufficiency review. *See Gonzalez v. Rangel,* No. 13–05–641–CV, 2006 Tex.App. LEXIS 7254, at *4, 2006 WL 2371464, at *1 (Tex.App.-Corpus Christi Aug.17, 2006, no pet.) (mem. op.) (citing *Vongontard v. Tippit,* 137 S.W.3d 109, 110 (Tex.App.-Houston [1st. Dist.] 2004, no pet.)). In this case, we will follow the lead of our memorandum opinion—and the jurisprudence of the Austin, Fort Worth, and Houston appeals courts—by applying a legal and factual sufficiency review. *Schaban–Maurer,* 238 S.W.3d at 822; *Vongontard,* 137 S.W.3d at 110; *B.C. v. Rhodes,* 116 S.W.3d 878, 883–84 (Tex.App.-Austin 2003, no pet.); *see also Gonzalez,* 2006 Tex.App. LEXIS 7254, at *4, 2006 WL 2371464, at *1.

"A legal sufficiency challenge may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact." *Schaban–Maurer,* 238 S.W.3d at 823 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L.REV.

361, 362–63 (1960)). In our determination of legal sufficiency, "we must consider evidence favorable to the finding if a reasonable fact-finder could, and disregard evidence contrary to the finding unless a reasonable fact-finder could not." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005)).

In a factual sufficiency review, we review all the evidence that supports or undermines the finding. *Golden Eagle Archery v. Jackson*, 116 S.W.3d 757, 761–62 (Tex.2003); *see also Gonzalez*, 2006 Tex. App. LEXIS 7254, at *5–6, 2006 WL 2371464, at *2. A factual sufficiency challenge may only be maintained if the finding is so weak or the evidence to the contrary is so overwhelming that the answer ought to be set aside and a new trial ordered. *Schaban–Maurer*, 238 S.W.3d at 823–24.

## IV. ISSUES

Ira raises three arguments against the protective order: (1) that the county court erred in finding him guilty of family violence; (2) that the county court erred in excluding evidence that Helen was mentally incompetent to testify; and (3) that the county court erred in determining that family violence would occur again in the future. We disagree with each argument.

### A. Finding of Prior Family Violence

■ Ira does not deny Linda's allegations of his conduct on November 23. Instead, Ira's principal argument on appeal is that the admitted conduct did not constitute "family violence" as the term is defined under the family code. *See* TEX. FAM.CODE ANN. § 71.004 (Vernon 2002). We believe, however, that Ira's conduct meets the definition of family violence.

Family violence is "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault *or that is a threat that reasonably places the member in fear* of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself." *Id.* (emphasis added). Ira's behavior fits under this definition, even though Ira never actually struck his wife or daughter because the code provides that putting a family member "in fear of imminent physical harm, bodily injury, [or] assault" constitutes family violence. *Id.* Thus, the allegations that Ira made threats to his wife and daughter and raised his fist at his daughter are sufficient to implicate his conduct as "family violence." *Id.*

■ Moreover, the evidence that the conduct occurred is legally and factually sufficient. Linda's sworn affidavit, made on December 2, 2003, alleges that on November 27 of that year, Ira "went into a rage" when she was at his house. In particular, Linda alleges in the affidavit that Ira "grabbed [her] with his left hand and pulled back to slap [her] with his right hand," "drew back his left fist to hit [her]," and "grabbed a handful of [her] hair and pulled." These statements were undisputed at the hearing because Ira did not call any witnesses to counter the allegations, nor did he testify himself in order to offer a different account of events. Additionally, undisputed testimony from the hearing revealed that Ira had grown increasingly violent in the months leading up to his arrest and had repeatedly threatened Helen and made her fearful. Linda and Clela both testified on these matters, and Linda specifically mentioned a bruise on Helen's arm, which she believed was the result of a blow from Ira. The daughters' testimony is supported by testimony from the two members of the sheriff's department who

recounted similar observations about Helen's fearfulness.

Applying the standards of legal sufficiency review, we are compelled to affirm the county court's protective order. The testimony from Ira's daughters and the two members of the sheriff's department does not constitute a complete absence of vital fact, we are not barred by any rules of evidence from considering the evidence, and the evidence does not establish conclusively the opposite of a vital fact. *See Schaban–Maurer*, 238 S.W.3d at 823.

Finally, the evidence certainly amounts to more than a "mere scintilla." *Id.* "More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact." *See id.* at 823. Testimony from both of Ira's daughters about his behavior towards Helen offers a reasonable basis for differing conclusions by reasonable minds. Therefore, it cannot be said that there is less than a scintilla of evidence. *See id.*

Nor can it be said that the evidence is factually insufficient because the finding of family violence in this case is not so weak, nor is the evidence to the contrary so overwhelming, that the finding of family violence ought to be set aside. *Id.* (citing *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965)). Indeed, there is no evidence to the contrary because Ira did not offer any contradicting account of events.

■ Finally, we disagree with Ira's argument that his November 27 conduct was justified under the penal code because Linda was a trespasser on his property. Evidence was presented at the hearing that even after ordering Linda not to return to his house, Ira phoned her on multiple instances and requested that she take Helen to Linda's household. Having specially consented to Linda's presence at the home, Ira cannot reasonably argue that Linda's presence constituted a trespass. *See* TEX. PENAL CODE ANN. § 30.05(a) (Vernon Supp. 2007). Furthermore, Linda was with Helen when she arrived at the Clements home, and she believed she had Helen's consent to enter the premises. The county court did not err, therefore, in finding sufficient evidence to find Ira guilty of family violence.

## B. Evidence that Helen was incompetent to testify

■ Ira also argues that he was denied a fair hearing because the lower court did not permit him to present evidence that Helen was mentally incompetent, and therefore, her out-of-court statements, which were introduced by his daughters, were untrustworthy. We do not reach the issue, however, because we believe that if any error existed, it was harmless in light of the other testimony offered at the hearing. *See* TEX.R.APP. P. 44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment.").

If the county court erred by refusing to allow evidence of Helen's mental incompetency, then, according to Ira, a properly conducted hearing would have excluded all testimony referencing Helen's out-of-court statements. Such a hearing, however, still would have featured the following significant evidence implicating Ira:(1) testimony from Linda that Ira had assaulted her and forcefully grabbed Helen on November 27th, (2) testimony from Officer Miles corroborating Linda's version of events, (3) testimony from Officer Miles that Ira had stated that he "should have beat the hell out of [Linda]", (4) testimony that Ira had verbally and physically abused the house-

keeper and Helen's caretaker, (5) testimony from Linda that she had seen a bruise on Helen's arm in the shape of a thumb and fingers (suggesting that someone had struck her), and (6) testimony from Officer Bensfield that Helen appeared nervous and shaken when he came to arrest Ira on Dec. 2nd.

In light of the significant evidence weighing against Ira, the possibility that Helen's out-of-court statements were untrustworthy is harmless, and thus we are prohibited from reversing the trial court's order. *See id.; see also Smith v. Smith*, No. 11-04-00023-CV, 2005 Tex.App. LEXIS 1983, at *7, 2005 WL 608190, at *3 (Tex.App.-Eastland March 17, 2005, no pet.) (mem. op.) (declining to address whether the trial court in a family violence protective order hearing had erred by admitting certain evidence because the evidence was "merely cumulative of other evidence").[1]

## C. Finding of future family violence

 Ira's final argument on appeal is that the lower court was in error to find that family violence would likely occur again in the future. We again disagree.

 In parental termination and child custody cases it is well-settled that "evidence that a parent has engaged in abusive or neglectful conduct in the past permits an inference that the parent will continue this behavior in the future." *In re T.L.S. and R.L.P.*, 170 S.W.3d 164, 166 (Tex. App.-Waco 2005, no pet.). An extensive body of case law from the appellate courts now directly extends this principle to family violence protective order cases. *See id.; Schaban–Maurer*, 238 S.W.3d at 824; *In*

*re Epperson*, 213 S.W.3d 541, 544 (Tex. App.-Texarkana 2007, no pet.); *In re M.G.M.*, 163 S.W.3d 191, 202 (Tex.App.-Beaumont 2005, pet. denied); *see also Banargent v. Brent*, No. 14-05-00574-CV, 2006 Tex.App. LEXIS 1561, at *3, 2006 WL 462268, at *1-2 (Tex.App.-Houston [14th Dist.] Feb. 28, 2006, no pet.) (mem. op.). "Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *Epperson*, 213 S.W.3d at 544 (citing *T.L.S.*, 170 S.W.3d at 166).

Moreover, a period of less than one year that is marked by violent behavior—such as the eight to ten months during which Ira became violent, according to the testimony offered by his daughters—is sufficient to find that family violence could occur again in the future. *See id.* at 543.

Ira argues that because the testimony at the hearing established that he had been non-violent and peaceful in the past, the evidence was insufficient that he had a past history of violence and would likely be violent again in the future. This argument, however, fails to take account of the considerable testimony describing Ira as having become "increasingly violent and angry" over the previous eight months.

Although there is case law which suggests that past violence is insufficient for a finding that future violence is likely to occur, these cases concern single, isolated acts of violence. *See Schaban–Maurer*, 238 S.W.3d at 824–25 (citing *In re J.A.T.*, No. 13-04-00477-CV, 2005 Tex.App. LEXIS 6618, at *1, 2005 WL 1981497, at *1 (Tex.App.-Corpus Christi Aug.18, 2005, no

---

1. Instead of making an offer of proof to preserve error on the issue of the county court's exclusion of evidence, Ira opted to file a formal bill of exceptions. *See* Tex.R.App. P. 33.2. The parties dispute whether the bill of exceptions adequately preserved error, but we need not address the issue because, as we note in the body of the opinion, any error would have been harmless.

pet.) (mem. op.)). That case law is inapposite here because the testimony offered by Ira's daughters at the protective order hearing indicates a pattern of violent behavior over several months—not merely a single incident. The lower court, therefore, did not err in finding that family violence could occur again in the future.

## V. Conclusion

The testimony from Ira's daughters regarding his increasingly violent behavior in the months leading up to his arrest, is legally and factually sufficient evidence to support the protective order. Moreover, Ira's arguments that his threat of force was justified to ward off a trespasser, that he was prejudiced by the county court's refusal to admit evidence of Helen's incompetence to testify, and that it was an error to find that family violence would occur again in the future, all fail. Accordingly, we affirm the judgment of the county court.