

**NUMBER 13-08-488-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**JUANITA GONZALEZ,**                                                    **Appellant,**

**v.**

**HELEN RENEE GALVAN,**                                               **Appellee.**

---

**On appeal from the 430th District Court
of Hidalgo County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Vela**

Appellant, Juanita Gonzalez, appeals a trial court order denying her motion for a

protective order against appellee, Helen Renee Galvan.  By two issues, Gonzalez urges

that she established as a matter of law that family violence was going to occur in the future

and that the trial court's finding that family violence was not likely to occur in the future was

against the great weight and preponderance of the evidence. We affirm.

## I. BACKGROUND

Gonzalez and Galvan were in a five year relationship that ended unhappily. Gonzalez testified that on February 29, 2008, Galvan attacked her when the two met to return a diploma that was still in Galvan's possession after the relationship ended. Gonzalez introduced photographs showing where she had been scratched and bruised, as well as photographs of her car that showed it had sustained damage. She testified that Galvan had inflicted these injuries upon her and was responsible for the damages to her car.

Gonzalez introduced two other instances which she argues showed a history of discordant behavior between the two. First, Gonzalez testified that in October 2007, after their break-up, Galvan entered her apartment and an altercation between the two ensued. Second, Gonzalez claimed that while the two were still together, she was hospitalized because Galvan hit her with a curtain rod several times on her leg. At that time, she lied to the healthcare professionals, telling them that she had fallen and cut herself in order to protect Galvan from getting arrested. She testified that she lied because Galvan was on probation. Gonzalez testified that Galvan continued to threaten her and that she still feared her.

On cross examination, Galvan introduced letters into evidence written by Gonzalez after the two had ended their relationship. The letters contained expressions of love. Gonzalez admitted that things she wrote in the letter were not consistent with being afraid of Galvan. Galvan's counsel also introduced telephone records into evidence that showed that the two had been communicating prior to the incident made the basis of the motion

for protective order. The evidence showed that Gonzales called Galvan two times on February 12, six times on February 13, seven times on February 14, once on February 16, once on February 17, nine times on February 18, and six times on February 21. Gonzalez said she also became aware that Galvan's car window had been broken two days after the incident in question, but she denied involvement in that incident, despite suggestions from Galvan's counsel that she might be responsible.

Officer Rene Navarro testified that she responded to a call from Juanita Gonzalez in October, 2007. Gonzalez told Navarro that an assault had occurred. Navarro observed scratch and bite marks on Gonzalez. On cross examination, Officer Navarro stated that she did not believe her testimony constituted the complete story because she had heard from only one of the parties. Counsel for Galvan introduced a police report from that evening which showed that Galvan was claiming that she was being kicked and beaten by Gonzalez.

Hector Bautista of the Hidalgo County Sheriff's office took Gonzalez's statement regarding the February 29th incident. He observed injuries on her. He said that Galvan had been arrested for assault against Gonzalez.

Galvan did not testify at the hearing, invoking her Fifth Amendment protection against self incrimination. *See* U.S. CONST. AMEND. V. She had been arrested on the morning of the hearing for protective order based upon conduct that occurred on February 29, 2008.

At the end of the hearing, the court stated that it believed family violence had occurred, but the trial court did not believe that Gonzalez had established, to the court's satisfaction, that such violence would occur in the future. The trial court reasoned:

"[W]e're not talking about young, immature people here.  We're talking about people who are self-employed and able to leave."  The court further stated:  "Separate, people.  Get away from one another and knock it off before one of you ends up in prison because that's where this is going."  The trial court admonished both parties and urged them to stop.  Thereafter, the court denied the protective order.

## II.  STANDARD OF REVIEW

In this case, we apply a legal and factual sufficiency review of the evidence.  *Cements v. Haskovec,* 251 S.W.3d 79, 84 (Tex. App.–Corpus Christi 2008, no pet.);  *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 823 (Tex. App.–Ft. Worth 2007, no pet.).  When the trial court acts as a fact finder, we review its findings under the legal and factual sufficiency standards.  *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000).

The fact finder is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony.  *Canal Ins. Co. v. Hopkins,* 238 S.W.3d 549, 557 (Tex. App.–Tyler 2007, pet. denied) (op. on reh'g).  The fact finder is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary.  *Id.*  Accordingly, reviewing courts must assume that the fact finder decided all credibility questions in favor of the verdict if a reasonable person could do so.  *Id.*  If a reasonable finder of fact could have done so, we must assume that the finder of fact chose what testimony to disregard in a way that was in favor of the verdict.  *Id.*  A fact finder may disregard even uncontradicted and unimpeached testimony from disinterested witnesses where reasonable.  *Id.*

4

### III. APPLICABLE LAW

A trial court shall render a protective order if, after a hearing, it finds that family violence has occurred and is likely to occur in the future. TEX. FAM. CODE ANN. § 81.001 (Vernon 2008). Evidence that a person has engaged in abusive conduct in the past allows an inference that the person will continue violent behavior in the future. *Schaban-Mauer,* 238 S.W.3d at 824; *see In re Epperson*, 213 S.W.3d 541, 543 (Tex. App.–Texarkana 2007, no pet.). "Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *In re Epperson*, 213 S.W.3d at 544. The cases clearly allow, but do not necessarily require, the trier of fact to make the inference that a person will continue violent behavior in the future because of past violence. *See Clements,* 251 S.W.3d at 87-88*; see also In re J.A.T.*, No. 13-04-00477-CV, 2005 WL 1981497, at *1 (Tex. App.–Corpus Christi Aug. 18, 2005, no pet.) (mem. op.).

### IV. ANALYSIS

Here, the trial court stated on the record that family violence had occurred, but the trial court obviously did not believe that Galvan's past acts necessarily translated into evidence that she would commit future acts of violence. The court found, as a fact, that the evidence did not support the "findings required under Section 86.001 [sic] to issue a protective order." While the trial court's order does not seem to be in accord with its observation at the end of the hearing, namely, that someone was going to end up in prison, we may not substitute our judgment for that of the trial court, who had the opportunity to view the demeanor of both Gonzalez and Galvan first-hand.

Examining the evidence that was before the trial court, we cannot conclude that Gonzalez established as a matter of law that family violence would occur in the future or that the trial court's determination was against the great weight and preponderance of the evidence. The trial court had before it testimony of the alleged incidents of violence against Gonzalez. The first was arguably only one side of the story. Gonzalez testified that she lied about the second to the health professionals. Conceivably the trial court found her recount of the incident not credible. The trial court chose to believe Gonzalez's testimony regarding Galvan's past behavior, but obviously the court did not believe that Galvan was likely to commit future violent acts. The trial court obviously concluded that there would be no future acts of violence.

The trial court apparently did not believe Gonzalez's testimony, perhaps because Gonzalez continued to telephone Galvan, even after earlier violent attacks had allegedly occurred. Because a trial court is in the best position to observe a witness's demeanor, it is given latitude to believe or disbelieve a witness's testimony, particularly when the witness is interested in the outcome. *In re Doe 4,* 19 S.W.3d 322, 325 (Tex. 2000); *Salaymeh v. Plaza Centro, LLC,* 258 S.W.3d 236, 240 (Tex. App.–Houston[1st Dist.] 2008, no pet.). It was, therefore, the province of the trial court to determine the weight to be given Gonzalez's testimony.

In this case, the trial court was in the best position to observe the witnesses demeanor and the weight to be given the testimony. We will not second guess the trial court with regard to the weight and credibility it afforded Gonzalez's testimony.

## V. Conclusion

We overrule appellant's issues one and two and affirm the trial court's decision to deny Gonzalez's motion for protective order.


ROSE VELA
Justice


Memorandum Opinion delivered and
filed this 23rd day of April, 2009.