

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00391-CV

MARION TAITE, JR.                                                 APPELLANT

V.

ALMA ZAPATA                                                       APPELLEE

----------

## FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Marion Taite, Jr. appeals the trial court's protective order in favor of appellee Alma Zapata. In his only issue, appellant contends that appellee presented "no evidence that family violence occurred . . . or will occur in the future." We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts

In July 2010, the Tarrant County District Attorney's Office, on behalf of appellee, filed an application for a protective order against appellant, alleging that he had engaged in family violence.[2]  Appellee signed an affidavit that the district attorney's office attached to the application.  In the affidavit, appellee alleged, among other facts, that appellant had threatened her with violence, had physically hurt her, and had vandalized her apartment.  The trial court entered a temporary ex parte protective order against appellant and set a hearing on appellee's application.[3]

Appellant answered the application, and the parties filed other various documents.  One day after a September 27, 2010 evidentiary hearing in which seven witnesses testified, the trial court entered a final protective order.  In the order, the trial court found that "family violence . . . occurred and is likely to occur again in the future," that appellant committed the family violence, and that appellant "represent[ed] a credible threat to the physical safety" of appellee.  The trial court prohibited appellant, for a period of one year, from committing further family violence, communicating with appellee in a threatening or

---

[2]The family code provides authority for a prosecuting attorney to file an application for a protective order.  Tex. Fam. Code Ann. §§ 81.007(a), 82.002(d)(1) (West 2008).

[3]*See* Tex. Fam. Code Ann. §§ 83.001(a), .002(a) (West 2008).  The trial court later granted a continuance of the hearing and extended the temporary order.

harassing manner, going within two hundred yards of appellee's residence or employment, and possessing a firearm. Appellant filed a motion for new trial on the basis, in part, that appellee had produced no evidence of family violence. The trial court denied appellant's motion for new trial, and he brought this appeal.

## Evidentiary Sufficiency

In his sole issue, appellant argues that appellee did not present any evidence of family violence to support the trial court's protective order. Construing appellant's pro se brief liberally,[4] we will review his evidentiary sufficiency challenge under legal and factual sufficiency standards. *See Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 823 (Tex. App.—Fort Worth 2007, no pet.), *disapproved on other grounds by Iliff v. Iliff*, 339 S.W.3d 74, 83 n.2 (Tex. 2011); *see also Clements v. Haskovec*, 251 S.W.3d 79, 84–85 (Tex. App.—Corpus Christi 2008, no pet.) (applying a legal and factual sufficiency review to the appeal of a protective order).

We may sustain a legal sufficiency challenge only when the record discloses a complete absence of evidence of a vital fact, the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence establishes conclusively the opposite of a vital fact. *Schaban-Maurer,* 238 S.W.3d at 823 (citing *Uniroyal Goodrich Tire Co. v.*

---

[4]*See Hamilton v. Pechacek*, 319 S.W.3d 801, 806 n.2 (Tex. App.—Fort Worth 2010, no pet.).

*Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999)). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Id.*; *see Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007). "More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact." *Schaban-Maurer*, 238 S.W.3d at 823.

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is "so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding." *Id.* at 823–24 (citation omitted); *see Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g).

"A court shall render a protective order . . . if the court finds that family violence has occurred and is likely to occur in the future." Tex. Fam. Code Ann. § 81.001 (West 2008); *see id.* § 85.001(a) (West 2008); *Schaban-Maurer*, 238 S.W.3d at 824. "Family violence" includes an act by a member of a family against another member of the family that is "intended to result in physical harm, bodily injury, assault, . . . or that is a threat that reasonably places the member in

4

fear of imminent physical harm, bodily injury, [or] assault, . . . but does not include defensive measures to protect oneself." Tex. Fam. Code Ann. § 71.004(1) (West 2008). "Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.); *see Schaban-Maurer*, 238 S.W.3d at 824 ("[E]vidence a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future.").

In 1999, a court convicted appellant, pursuant to his guilty plea, for assaulting appellee.[5] According to the charging instrument in that case, appellant and appellee were family members at the time that the assault occurred. Appellant and appellee married in February 2006, and they have one child together. According to appellee, near the end of September 2009, she

---

[5]Appellant objected in the trial court to the admission of evidence concerning this conviction on the ground that the conviction was over ten years old. In the statement of facts section of his brief, appellant refers to rule of evidence 609 after stating, "No family violence could be proven in court[;] the only information they had was over 10 years old . . . ." Rule 609 concerns impeachment, and the evidence of appellant's prior conviction was not offered for impeachment but to prove that family violence had occurred, as the family code requires. *See* Tex. R. Evid. 609(b); *see also Murray v. Tex. Dep't of Family & Protective Servs.*, 294 S.W.3d 360, 369 (Tex. App.—Austin 2009, no pet.) (holding that a trial court did not err by admitting evidence of prior convictions in a parental termination case because "rule 609 is not a categorical limitation on the introduction of convictions for any purpose. Rather, it applies only to convictions offered for purposes of impeachment.").

stopped living with appellant and moved into an apartment.  Appellee testified that almost a year later, she filed for divorce.[6]

Appellee testified that in the several months preceding the evidentiary hearing, appellant had pushed her on more than one occasion.  For example, appellee testified that appellant had once pushed her off a bed with "full force," causing her to hit her head "really hard."  Appellee also told the trial court that appellant had grabbed her shoulders and wrists, which left marks and caused pain; had cut her off and followed her closely in his car; had vandalized her apartment; had torn her clothes; had damaged her computer and her car; and had wrestled with her to take money.  Appellee also said that on approximately ten occasions, appellant threatened to slit her throat and to kill her; she testified that appellant's threats scare her.  Appellee testified that she called the police each time appellant threatened her after May 2010.[7]

Appellant asserts that the evidence of family violence was faulty because appellee "could not give accurate dates and times of the abuse that matched her . . . Affidavit."  Indeed, appellee seemed to be confused or mistaken about when

---

[6]Appellant testified, however, that he first filed for divorce because appellee was making false allegations against him to obtain custody of their son.

[7]Marsha Adams, a Fort Worth Police Department employee, testified that she could not locate records of offense reports for domestic violence or assault against appellee by appellant from April 1999 until September 2010.  But Adams said that she did not check for offense reports that could have been classified under a different crime, such as harassment or criminal trespass.  And, in fact, appellant had a pending harassment charge, in which appellee was the alleged victim, at the time of the protective order hearing.

the violent or threatening incidents with appellant had occurred. For example, in her affidavit and in her initial testimony, appellee represented that in February 2010, she and appellant went to cash an income tax return, and appellant became "very upset because [appellee] spoke up and asked for [her] half." She said that appellant then used force to take the money. But appellee later testified that this incident occurred in February 2009, and appellant presented evidence that his tax refund that year was directly deposited into his bank account. Appellee then seemed to claim that the incident occurred in 2008. Also, although appellee testified that appellant had pushed her off a bed, she conceded at the hearing that she did not remember what month that occurred in even though she had sworn in her affidavit that it happened in October 2009.[8]

Appellant testified that appellee had made false allegations against him to try to obtain custody of their son, who, according to appellant, had been hidden by appellee. He said that appellee had lied to police officers. He added that he had never called appellee on the phone and threatened her, and he claimed that the State had changed a criminal charge against him from stalking to harassment "because [appellee] had lied."

Based on the discrepancies in appellee's testimony and on appellant's conflicting testimony, it seems that the trial court was compelled to decide

---

[8]Adams testified that she could not locate records of police reports or 911 calls involving appellant and appellee at either of two addresses during October 2009.

between two alternatives: the events described by appellee occurred even though her memory about the details of the events was faulty, or the events did not occur at all. By issuing the protective order and finding that appellant had committed family violence, it is evident that the trial court found that the events had occurred. The trial court was the sole judge of the credibility of the witnesses, and we may not substitute our judgment for the trial court's decision merely because we might have reached a different conclusion. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.), *cert. denied*, 525 U.S. 1017 (1998); *see also Young v. Young*, 168 S.W.3d 276, 281 (Tex. App.—Dallas 2005, no pet.) ("In a bench trial, it is for the court, as trier of fact, to judge the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony."); *In re M.G.M.*, 163 S.W.3d 191, 202 (Tex. App.—Beaumont 2005, no pet.) ("It was for the trial court alone to determine the credibility of the witnesses, and the trial court could have disregarded Matthew's denials [of committing family violence] in their entirety.").

Furthermore, other witnesses' testimony supports the trial court's implicit choice to believe appellee and to therefore expressly determine that appellant had committed family violence against appellee and was likely to do so again. Fort Worth Police Department Officer Darryl Drebing testified that appellee called 911 one afternoon about the "harassment she was receiving from . . . [her] estranged husband." Officer Drebing met with appellee and noticed approximately twenty-nine missed calls and about eighty text messages over the

8

course of three days in June 2010 from appellant on appellee's cell phone. Appellee also gave Officer Drebing flyers that, according to appellee, had been delivered by appellant to third-parties; the substance of the flyers focused mainly on appellant's allegation that appellee had cheated on him, and the headline of one the flyers referred to appellee as a "cheating WIFE that lies, and Preach[es] to Others about god."

Also, Karli Gilmore, appellee's coworker and friend, testified that appellant had been sending text messages that caused her concern for appellee's safety. Specifically, on June 6, 2010, appellant sent Gilmore a message stating, "Both of you bitches are spiritually dead, just waiting for the physical one. God hate[s] traitors and worse [sic] of all cheaters . . . . [Appellee] is a 360 degree loser."[9] The same day, appellant sent Gilmore another message stating, "I am not saying that I want to hurt anyone. You and slut are not worth it. I have [my son] to worry about. . . . His mom is dead, and believe it or not it's the best thing to happen in his life. He just don't know it yet." Gilmore believed that appellant was a threat to appellee's physical safety.

Considering the foregoing evidence and the remaining facts in the record that are favorable to the trial court's family-violence finding if a reasonable factfinder could and disregarding evidence contrary to the finding unless a

---

[9]It would strain reason to conclude that this text message was part of a "conversation regarding the rights and wrongs of the [B]ible," as appellant contends.

9

reasonable factfinder could not, we conclude that there is more than a scintilla of evidence to support the finding. Thus, we hold that the evidence is legally sufficient to justify the trial court's decision to issue a protective order. *See Schaban-Maurer*, 238 S.W.3d at 823. Likewise, recognizing the trial court's authority to determine the witnesses' credibility and resolve conflicting evidence, we cannot conclude that the evidence supporting the trial court's family-violence finding was so weak or the evidence to the contrary so overwhelming that the finding should be set aside. *See id.* at 823–24. We therefore hold that the evidence is factually sufficient.

Finally, we note that appellant argues that it was inconsistent for the trial court to issue the protective order without ordering him to take battering intervention classes. The family code provides that in a protective order, a trial court may order the person who committed family violence to complete a battering intervention program; the code, however, does not state that a court must order the completion of such a program as part of every protective order. Tex. Fam. Code Ann. § 85.022(a)(1) (West Supp. 2010). Thus, we do not agree with appellant that it was inconsistent for the trial court to enter the protective order but not order him to complete a battering intervention program.

For all of these reasons, we overrule appellant's only issue.

**Conclusion**

Having overruled appellant's issue, we affirm the trial court's judgment.


PER CURIAM

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  October 27, 2011