**Affirmed and Memorandum Opinion filed January 4, 2024.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-22-00754-CV

**JULIA K. HOUSTON, Appellant**

**V.**

**WILLIAM DAVID WEISSINGER JR., Appellee**

**On Appeal from the 280th District Court
Harris County, Texas
Trial Court Cause No. 2022-42981**

## M E M O R A N D U M    O P I N I O N

In this appeal from a final family-violence protective order, the only complaints raised on appeal and preserved for our review are appellant Julia K. Houston's challenges to (a) the legal sufficiency of the evidence to support the trial court's stalking finding, (b) the legal and factually sufficiency of the evidence to support the trial court's harassment finding, and (c) the existence of evidence to authenticate screenshots of messages attributed to her. We conclude that these complaints lack merit; thus, we affirm the trial court's protective order.

# I. BACKGROUND[1]

Houston and appellee William David Weissinger Jr. formerly had a romantic relationship, during which Houston moved into Weissinger's house and paid him monthly rent. When Weissinger ended the relationship, Houston refused to move out, so Weissinger stayed with a friend for about six weeks during the eviction proceedings. While Weissinger was staying with his friend, Houston would call and text Weissinger and bang on the window of the room where Weissinger was staying.

Houston moved out in the spring of 2022. After Weissinger returned to his home, he began receiving texts from Houston that included videos taken of Weissinger from inside his house. He eventually found that a total of four cameras, a hub, and separate internet connection had been installed in his house without his consent. Moreover, Houston hacked Weissinger's social-media and email accounts, denying him access.

Things escalated after June 5, 2022, when Weissinger's friend Katherine Nguyen went on an excursion with Weissinger, leaving her car parked in front of Weissinger's home. During that time, one of Nguyen's car's tires was punctured. A few days later, Weissinger received the following text messages from a phone number he identified as belonging to Houston:

> I'm sorry
> She's done for
> And maybe you
> And maybe all of us
> You're not getting away with this

A day later, Houston texted Weissinger,

---

[1] In accordance with the standard of review, we summarize the evidence in accordance with the presumption that the trial court resolved all conflicts in the evidence and all credibility determinations in a manner that supports its final protective order. *See* Section III, *infra*.

> She's dead you know
> All your fault

Weissinger celebrated the Fourth of July with Nguyen, who posted a picture of the two of them on one of Nguyen's social-media accounts. On July 5th, Weissinger received a text message containing the picture of himself and Nguyen, accompanied by the messages,

> For yalls [sic] memorial service
> Dead

Weissinger believed that Houston was now stalking his friends as well as himself, and he considered the message an explicit threat.

On July 11th and 12th, Weissinger received a series of text messages from two email addresses, each of which began with "julz." Weissinger recognized the email addresses as belonging to appellant Julia Houston. In the first email, Houston stated, "I found your friend. I can leave it alone if you'll meet with me now." This message was followed by several more in which Houston pleaded with Weissinger to resume their relationship and threatening to "completely go postal" if he were to have an intimate relationship with anyone else. Houston also stated, "Stop your f*cking attacks against me and I'll turn all your sh*t back to you." Weissinger testified that Houston was referring to his Facebook, LinkedIn, and Snapchat accounts, to which Houston still denied him access.

Weissinger applied for a protective order and obtained a temporary *ex parte* protective order on July 19, 2022. While that order was in effect, Weissinger received a message from a new email address, forwarding a copy of the message previously sent from Houston's email address, in which she said, "Stop your f*cking attacks against me and I'll turn all your sh*t back to you." Also from the new email address, Weissinger received a text message stating, "Your list was 100% complied with as of this morning yet you went against the agreement anyhow. If anything

3

progresses I[']ll have no choice but to do[ . . . .]" Weissinger testified that he believed the new message was from Houston and that the agreement she referenced her offer to turn his social media and email accounts back over to him if he stopped pursuing his application for a final protective order.

While the case was pending, Weissinger received a letter from the U.S. Postal Service confirming that a person with a username or email address beginning with "JULZ" had signed up for "informed delivery," which would allow that user to view and manage mail and packages that were scheduled for delivery to Weissinger's home. Meanwhile, Weissinger continued to receive texts from Houston's email account and from the account of one of Houston's children. Houston stated that she had turned over one social-media account and "[t]he next will be when we meet and I have in writing from you that no legal action/recourse will be [taken]." Weissinger also received another photo,[2] accompanied by the messages,

> I hate you
> Sitting in your lap
> Are you f*cking kidding me
> File your sh*t
> Doesn't mean a damn thing
> Doesn't put a magic bubble around anyo[n]e

Houston also emailed Weissinger, "Stand down and call martina off completely. Never contact her or any bs attorney or legal sh*t aga[in.]" Martina is the first name of Weissinger's attorney in this case.

Both Weissinger and Nguyen testified to receiving phone calls over and over from a caller who had blocked the phone's number from appearing to the recipient. Weissinger testified that the few times he answered, Houston was on the line.

---

[2] The screenshot admitted as evidence contains the text messages accompanying the photo, but so much of the photo has been cut off that the image it contains cannot be identified.

Nguyen said she received over a hundred calls from blocked numbers. She said that on one occasion when she answered such a call, the caller recorded her voice, then phoned Weissinger and played the recording to him. On two occasions when Nguyen answered calls, the female caller threatened to cut Nguyen's throat. Nguyen also testified that her friend Allie had advised her that Houston was asking questions about Nguyen. Nguyen actually saw Houston only once. While staying at Weissinger's house, Nguyen saw Houston tugging at the front and back doors, trying to get in. Nguyen testified that she stayed out of Houston's sight.

Finally, four days before the hearing on the final protective order, two of Nguyen's tires were punctured while her car was parked at her own apartment complex.

For her part, Houston admitted asking a mutual friend questions about Nguyen but denied that she ever threatened Weissinger; that she ever called Nguyen; that she showed up at the home where Weissinger was staying during the eviction; or that she punctured Nguyen's tires. She testified that she had not attempted to communicate with Weissinger in the six weeks before the hearing and that the messages sent from her child's email account—including a message telling Weissinger to "[d]ispose of any and all matters between us immediately"—must have been sent by her daughters, ages 11 and 16.

Based on its findings that Houston had committed family violence against Weissinger by stalking and harassing him and that family violence is likely to occur in the future, the trial court granted Weissinger a lifetime protective order. Among other provisions, the order prohibits Houston from going within 200 feet of any location that she knows or believes Weissinger may frequent and to leave immediately if she sees him. The order also requires Houston to obtain a psychological evaluation, to file the evaluation with the court as a confidential

5

document, and to follow all treatment recommendations. Houston moved unsuccessfully for a new trial and now appeals the protective order.

## II. Issues Presented

Houston presents three issues for review. In her first issue, she argues that the trial court erred in ordering her to submit to a psychological evaluation and to follow all treatment recommendations. In her second issue, she contends that the trial court abused its discretion in failing to rule on certain evidentiary objections. Under this heading, Houston also challenges the evidence authenticating the screenshots of messages to Weissinger. She asserts in her third issue that the trial court abused its discretion in prohibiting her from coming within 200 feet of any location that she knows or believes Weissinger may frequent.

Houston also has briefed distinct matters that do not fall within her stated issues. In these, she challenges the legal sufficiency of the evidence of stalking and the legal and factual sufficiency of the evidence of harassment.

## III. Legal Sufficiency of Stalking Evidence

The trial court found reasonable grounds to believe that Weissinger is a victim both of stalking as defined in section 42.072 of the Texas Penal Code and Chapter 7B of the Code of Criminal Procedure and of harassment as defined in section 42.07 of the Texas Penal Code; thus, the protective order can be supported by evidence of either stalking or harassment. We begin our analysis with Houston's challenge to the legal sufficiency of the evidence to support the stalking finding.

In a legal sufficiency challenge, we view the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We presume that the factfinder resolved conflicts in the evidence in the prevailing party's favor,

crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See id.* at 821–22, 827. If more than a scintilla of evidence supports the finding, it is legally sufficient. *See Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex. 2001). On review, we remain mindful that the factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *N. E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 255 n.50 (Tex. 2020). Thus, less evidence is needed to affirm than to reverse a judgment. *Castillo v. Luna*, 640 S.W.3d 256, 260 (Tex. App.—Houston [14th Dist.] 2021, pet. denied).

## A. Legal Sufficiency of the Evidence That Houston Knew Her Behavior Constituted Stalking

Houston first challenges the legal sufficiency of the evidence by asserting that there is no evidence that she knew her behavior constituted stalking, inasmuch as Weissinger testified that Houston showed up "everywhere I was," and there is no additional testimony that she "showed up to any one particular place where [Weissinger] was."

But Weissinger was not required to produce evidence that Houston physically appeared repeatedly at a particular location. *See Manuel v. State*, 357 S.W.3d 66, 84 (Tex. App.—Tyler 2011, pet. ref'd) ("[A] threatening visual or physical proximity is not an element of stalking."). Under the version of the stalking statute applicable to this case, an actor commits the offense of stalking if the actor, "on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct" that the actor knows or reasonably should know that the subject will reasonably regard as threatening the bodily injury or death of the subject, or of a member of the subject's family or household, or of a person the subject is dating, or even of threatening only the

7

subject's property.[3] An actor can commit the offense of stalking even by knowingly engaging in conduct that would reasonably cause the subject to feel only harassed, annoyed, embarrassed, or offended. There is no requirement that the actor additionally know that the behavior at issue constitutes the offense of stalking; it is sufficient that the actor be aware that the conduct is reasonably certain to cause the result. *See* TEX. PENAL CODE § 6.03(b).

**B.  Legal Sufficiency of the Evidence That Houston Has a History of Violent Behavior**

In a similar vein, Houston states there is no evidence that she has a history of violent behavior so as "to warrant a fear of subsequent threatening behavior." But again, the statute does not require evidence of past violent behavior, and Houston cites no authority that this is an element of stalking as statutorily defined.

The existing evidence is legally sufficient evidence to support a finding that Houston knew, or reasonably should have known, that Weissinger reasonably regarded her conduct as threatening bodily injury or death. In particular, she sent Weissinger a photo of himself and Nguyen with the messages, "For yalls memorial service," and "Dead." She continued her threatening conduct even while a temporary protective order was in effect, telling Weissinger that the lawsuit "[d]oesn't put a magic bubble around anyo[n]e." And, of course, Nguyen witnessed Houston actually trying to enter Weissinger's home. Weissinger testified that, given the cumulative effects of the messages, the late-night phone calls, and the repeated puncturing of Nguyen's tires, he felt that Houston posed a risk of bodily harm to himself and to anyone with whom he became romantically involved.

---

[3] Act of May 24, 2013, 83d Leg., R.S., ch. 1278, § 2, 2013 TEX. GEN. LAWS 3231, 3231 (amended 2023) (current version at TEX. PENAL CODE § 42.047).

The evidence we have summarized constitutes more than a scintilla of evidence not only to support that belief, but to support the inference that Houston knew her conduct would cause a reasonable person such apprehension. *Cf. Clements v. Haskovec*, 251 S.W.3d 79, 85 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) (evidence supported family-violence finding where father threatened to, but did not, strike wife and daughter). Indeed, to all appearances, that was Houston's intent.

We overrule Houston's challenge to the legal sufficiency of the stalking finding, which renders it unnecessary to consider her challenges to the harassment finding.

## IV. UNPRESERVED COMPLAINTS

Turning now to Houston's expressly stated issues, we conclude that most of her complaints are unpreserved. A complaint is preserved for appellate review if the record shows that (a) the complaint was raised in the trial court by a timely request, objection, or motion that stated the grounds for the requested ruling and complied with the applicable rules; and (b) the trial court explicitly or implicitly ruled on the request, objection, or motion, or the complaining party objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a). As an exception to this general rule, complaints about the legal or factual insufficiency of the evidence presented in civil, nonjury trials may be raised for the first time on appeal. TEX. R. APP. P. 33.1(d).

On appeal, Houston has made the following complaints, which were not raised in the trial court:

1. Weissinger did not plead for the trial court to order Houston to submit to a psychological evaluation, and the issue was not tried by consent;[4]

---

[4] *See Fontenot v. Fontenot*, 667 S.W.3d 894, 908 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (by failing to raise them in the trial court, appellant waived complaints that applicant did

2. Because Weissinger did not plead for such relief, Houston had no notice that the trial court might order her to have a psychological evaluation;[5]

3. The final protective order does not adequately describe the scope of the mandatory psychological evaluation;[6]

4. The order for a psychological evaluation does not comply with the requirements of Texas Rule of Civil Procedure 204.1;[7]

5. The trial court violated the due-process clause of the Fourteenth Amendment by asking Houston on the record whether she had ever been diagnosed with a mental-health disorder;[8]

6. The trial court failed to rule on a speculation objection;[9]

7. The trial court failed to rule on her objection that opposing counsel asked a leading question when authenticating Exhibit 1-C;[10] and

8. The part of the order prohibiting Houston from going within 200 feet of a location that she knows or believes Weissinger may frequent is insufficiently specific because it does not list all of the addresses to which the prohibition applies.

---

not plead for "the provisions in the trial court's protective order concerning counseling and a psychological evaluation").

[5] *See id.*

[6] *See id.*

[7] Our conclusion that this complaint is unpreserved should not be read to suggest that Texas Rule of Civil Procedure 204.1, which applies to physical or mental examinations as part of the discovery in civil suits generally, is similarly applicable to a final family-violence protective order.

[8] *See J.Y. v. Tex. Dep't of Family & Protective Servs.*, No. 14-20-00835-CV, 2022 WL 1463738, at *2 (Tex. App.—Houston [14th Dist.] May 10, 2022, no pet.) (mem. op.) (constitutional complaints must be preserved in the trial court). This argument is directed to the following question asked by the trial court when announcing its ruling: "Ms. Houston, have you ever been diagnosed with any sort of mental health disorders?" Houston's trial counsel did not object to the question, and Houston answered it.

[9] In the part of the record Houston cites, her attorney did not object on the ground of speculation but on the ground that opposing counsel's question to Weissinger "calls for testimony not in evidence." The trial court did not refuse to rule; it overruled the objection, and Houston does not challenge the merits of that ruling.

[10] To preserve such complaints, Houston was required to object to the trial court's refusal to rule. *See Doan v. TransCanada Keystone Pipeline, LP*, 542 S.W.3d 794, 807 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing TEX. R. APP. P. 33.1(a)(2)(B)). She did not do so.

10

These are not complaints of fundamental error, nor are they challenges to the legal or factual sufficiency of the evidence; thus, Houston was required to raise these complaints in the trial court. Because she did not, these complaints have not been preserved for review.

The lack of preservation eliminates all of the complaints raised in Houston's first and third issues, and most of the complaints raised in her second issue, from our review. We turn now to her only remaining complaint.

## V. AUTHENTICATION EVIDENCE

Houston couched her second issue as a challenge to the trial court's failure to rule on certain objections. Under that heading, Houston additionally asserted that unspecified emails and text messages were insufficiently or improperly authenticated and that no evidence links Houston to the phone numbers and email addresses used to send messages to Weissinger. Although improper or insufficient authentication is a defect of form that must be raised and ruled upon in the trial court, the complete absence of authentication is a defect of substance that may be raised for the first time on appeal. *See In re Estate of Guerrero*, 465 S.W.3d 693, 706–07 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc), and cases cited therein. We construe her complaint that "no evidence" links her to the phone numbers and email addresses in the screenshots of messages to Weissinger as a complaint that there is a complete absence of evidence authenticating those exhibits; however, this complaint is not supported by the record.

As for the screenshots of messages sent by email, Weissinger received messages from four addresses. He testified that he recognized two email addresses as belonging to Houston, and Houston testified that a third email address belongs to her daughter. Weissinger did not testify that he recognized the fourth email address; however, one message sent from that address was a duplicate of a message sent from

11

an email address Weissinger recognized as Houston's. The similar content of the messages sent via email also indicated that they were sent by the same person and that Houston is that person. Screenshots of text messages sent by phone were similarly authenticated by Weissinger's testimony that the sending telephone number was Houston's, by the content of the messages, or both.

This is some evidence that Houston sent the emails and text messages. *See* TEX. R. EVID. 901(a) (authenticating evidence must be sufficient to support a finding that the item is what the proponent claims it is); TEX. R. EVID. 901(b)(1), 901(b)(4) (authentication requirement may be satisfied by the testimony of a witness with knowledge or by the contents or other distinctive characteristics of the item, taken together with all the circumstances). Thus, there is not a complete absence of authentication. To the extent that Houston complains that the authentication evidence is insufficient or improper, such complaints have not been preserved for review.

We overrule this part of Houston's second issue.

## VI. CONCLUSION

Having overruled all of the complaints preserved for our review, we affirm the trial court's final protective order.

/s/     Tracy Christopher
        Chief Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Hassan.