

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00234-CV

_____

K.C., Appellant

V.

D.R., Appellee

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-766223-25

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Karen Cane[1], pro se, appeals from the protective order issued against her in favor of Appellee Debbie Ramos and her son, G.A. In six issues, Cane argues that the trial court (1) lacked jurisdiction; (2) erred by applying Texas Family Code Section 71.0021 when the evidence negated the existence of "dating violence"; (3) erred by refusing to recognize her defense of third persons; (4) violated her due-process rights; (5) abused its discretion by admitting unauthenticated exhibits "after acknowledging uncertainty in the statute and lack of supporting case law"; and (6) issued an unconstitutionally overbroad protective order. We will affirm.

## Background[2]

Cane is the romantic partner of G.A.'s father, Jerry Amaro.[3] Ramos filed an application for a protective order against Cane, alleging in the application's attached

---

[1]To protect the identity of the minor child involved in this case, we use initials for the child and use pseudonyms for the appellant, the appellee, and the child's father.

[2]Other than the parties' relationship to each other, the facts giving rise to the protective order are largely irrelevant to the issues on appeal, and we therefore do not discuss the trial evidence except as necessary below to address Cane's issues.

[3]We received a document, ostensibly an amicus brief, from Amaro, in which he repeats some of Cane's arguments and additionally argues that the protective order affects his possession of G.A. This document is not an amicus brief because it is not filed by "[a]n amicus curiae [who] is a 'bystander' [and] whose mission is to aid the court, to act only for the benefit of the court." *Rahman v. Discover Bank*, No. 02-19-00182-CV, 2020 WL 2202450, at *2 n.1 (Tex. App.—Fort Worth May 7, 2020, no pet.) (quoting *Johnson v. Conner*, No. 07-11-00055-CV, 2011 WL 3587425, at *2 (Tex. App.—Amarillo Aug. 16, 2011, no pet.) (brackets and alterations added in

2

affidavit that she had an altercation with Cane on March 23, 2025. Ramos asserted that on that date, Amaro had refused to return G.A. to her care. She alleged that she had waited at the White Settlement Police Station, the police station nearest to Amaro, "to see if [he] would bring [their] son" there. After four hours, she left after messaging Amaro that she was leaving. He then approached in his Tahoe, and Cane "also approached [Ramos's car] from another angle[,] stopped her car in the middle of the road[, got out of the car,] and rushed [Ramos's] car with a baseball bat wearing a ski mask as [Amaro] also stopped in the middle of the road." Cane then "got back in her car and began driving erratically, circling [Ramos's] car with hers, driving the wrong way down the street" until a police vehicle approached, at which point Cane and Amaro both left. Ramos further described other acts, which she characterized as harassing and threatening, that Cane had committed against her after the March 23 incident.

After a hearing at which Cane represented herself, the associate judge granted Ramos's protective-order application. *See* Tex. Fam. Code § 201.005(a) (providing that a presiding judge may refer to an associate judge an action under Family Code Title 4, which governs protective orders). The associate judge signed the order at the hearing,

_____

*Rahman*)). "Instead, the proposed brief would function as advocacy on [Cane]'s behalf and would be the equivalent of an appellant's brief. The amicus process cannot be used to circumvent the prohibition of a layperson acting as counsel for a party to an appeal." *Id.* There is good cause to refuse to consider the brief, and we have declined to consider it. *See id.* (citing Tex. R. App. P. 11 and stating that there was no good cause to permit filing of purported amicus brief in that case).

3

and the presiding judge (the trial court) subsequently signed it as well. Cane filed a motion for new trial and a voluminous amount of other motions and documents; her post order filings make up nearly 600 pages of the clerk's record. The trial court held three hearings on the motions that had been timely filed. *See* Tex. R. Civ. P. 329b(c). At the conclusion of the last hearing, the trial court orally denied Cane's motions. However, the trial court did not sign a written order, so the motions were overruled by operation of law. *See id.* Cane now appeals.

## Discussion

### I. Issues with Cane's brief

We start our discussion by noting that Cane's brief contains a concerning number of errors in its citations. First, Cane cited nine cases to support propositions that they do not support: *In re C.J.C.*, 603 S.W.3d 804, 811 (Tex. 2020); *In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005); *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005); *Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967); *Marshall v. State*, 479 S.W.3d 840, 844 (Tex. Crim. App. 2016); *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013); *In re E.L.T.*, 93 S.W.3d 372, 375 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *Allen v. State*, 479 S.W.3d 341, 345 (Tex. App.—El Paso 2015, no pet.); and *Clements v. Haskovec*, 251 S.W.3d 79, 83 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). Moreover, from *Allen*, Cane provided a purported quote that does not exist, and regarding *Clements*, she represented that the court of appeals reversed a trial court's protective order, when in fact, the court affirmed it.

4

Second, and equally concerning, is Cane's citing three cases that do not appear to exist: *In re J.B.G.*, 540 S.W.3d 446, 450 (Tex. App.—Houston [1st. Dist.] 2018); *Ex parte Hughes*, 133 S.W.3d 889, 891 (Tex. App.—Texarkana 2004, no pet.); and *Walker v. State*, 261 S.W.3d 356, 363 (Tex. App.—Beaumont 2008, no pet.). Cane's cite to the nonexistent *Walker v. State* is particularly concerning because, at one of the motion-for-new-trial hearings, the trial court told Cane that it was unable to locate a case using that citation, but she included the same citation in her brief to this court.[4] Because these citations either do not exist or do not support the proposition for which they are cited, any statement in Cane's brief for which they are the sole cited authority is a statement that is unsupported by authority. *See* Tex. R. App. P. 38.1(i). In addition to these issues, in multiple sections of her brief, Cane failed to provide relevant citations to the record.

"[A] pro se litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure." *Amir-Sharif v. Hawkins*,

---

[4]Cane filed a motion to supplement her brief to raise new issues. This court denied the motion, but we note that the supplemental brief also included a citation for a case that does not appear to exist. Additionally, the brief includes cites to several cases—for example, *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019), *State v. $435,000.00*, 842 S.W.2d 642, 644 (Tex. 1992), *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990); and *In re E.D.*, 419 S.W.3d 615, 617 (Tex. App.—San Antonio 2013, pet. denied)—to support propositions that they do not support. Moreover, for some of her issues, as with her original appellant's brief, she does not tell us where she raised the complaints below, does not tell us what parts of the record support her complaints, or does not cite authority to support her argument. *See* Tex. R. App. P. 33.1, 38.1(g), (i).

246 S.W.3d 267, 270 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.). "The rules of appellate procedure require an appellant's brief to contain 'a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *Id.* (quoting Tex. R. App. P. 38.1(i)). Complying with this rule is part of an appellant's responsibility to identify and explain how the trial court erred by, among other things, "present[ing] argument that will enable [the appellate] court to decide the case." *Cole v. Cole*, No. 02-25-00229-CV, 2026 WL 478940, at *3–4 (Tex. App.—Fort Worth Feb. 19, 2026, no pet. h.). We have no duty to "perform an independent review of the record and applicable law to determine whether the error complained of occurred," *Amir-Sharif*, 246 S.W.3d at 270, and we cannot abandon our role as a neutral arbiter to develop an appellant's legal argument that the appellant has failed to adequately brief, *Cole*, 2026 WL 478940, at *4. Because of the deficiencies of Cane's brief, we will hold below that many of the arguments under her issues present nothing for review. With these considerations in mind, we turn to Cane's issues.

## II. Qualifying relationship

Cane's first two issues both relate to the kinds of relationships that can give rise to a protective order under Family Code Title 4. Cane argues in her first issue that the trial court lacked jurisdiction because the evidence showed that no "qualifying relationship" existed under Texas Family Code Sections 71.0021, 71.003, 71.005, or 71.006. *See* Tex. Fam. Code §§ 71.0021, 71.003, 71.005, 71.006. Under Cane's second issue, she argues that the trial court misapplied Section 71.0021(b) by finding "dating

6

violence" between two women who had never dated each other, based solely on their separate relationships with a third party, Amaro. We begin with her second issue because our disposition of it also disposes of the first issue.

A trial court must issue a protective order to an applicant when the court finds that family violence has occurred. *See id.* § 81.001. The definition of "family violence" includes an act, other than a defensive measure to protect oneself, that constitutes a threat "by a member of a family or household against another member of the family or household" that "reasonably places the member in fear of imminent physical harm[ or] . . . assault." *Id.* § 71.004. For purposes of this section, the Family Code defines "family," "household," and "member of a household." *Id.* §§ 71.003 ("family"), 71.005 ("household"), 71.006 ("member of a household").

Further, relevant to this appeal, the definition of "family violence" also includes "dating violence." *Id.* § 71.004. As noted by Cane, the Family Code's definition of "dating violence" includes a threat that reasonably places the protective-order applicant in fear of imminent physical harm or assault when the threat is committed against the applicant "because of the . . . applicant's . . . dating relationship with an individual with whom the actor is or has been in a dating relationship."[5] *Id.*

---

[5]The full definition provides,

(a) "Dating violence" means an act, other than a defensive measure to protect oneself, by an actor that:

(1) is committed against a victim or applicant for a protective order:

7

§ 71.0021(a)(1)(B). A "dating relationship" is "a relationship between individuals who have *or have had* a continuing relationship of a romantic or intimate nature." *Id.* § 71.0021(b) (emphasis added).

Ramos testified that she and Amaro had not been romantically involved since 2019 and that she and Cane had never dated, were not related, and had never lived together, and Cane relies on this testimony to argue that Ramos failed to establish a "qualifying relationship" on which a family-violence finding may be based. Cane dismisses the applicability of Section 71.0021(a)(1)(B) in two ways.

First, she argues that for an act to constitute "dating violence," the parties to the protective order—the applicant and respondent—must have a dating relationship. This interpretation ignores Section 71.0021(a)(1)(B)'s plain language. *See In re Catherine Goodman*, No. 02-26-00061-CV, 2026 WL 547521, at *2 (Tex. App.—Fort Worth Feb. 26, 2026, orig. proceeding) (construing unambiguous statutory language according to its plain meaning). The statute addresses a situation in which the applicant has (or

---

(A) with whom the actor has or has had a dating relationship; or

(B) because of the victim's or applicant's marriage to or dating relationship with an individual with whom the actor is or has been in a dating relationship or marriage; and

(2) is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the victim or applicant in fear of imminent physical harm, bodily injury, assault, or sexual assault.

Tex. Fam. Code § 71.0021.

8

previously had) a dating relationship with an individual and that same individual has (or previously had) a dating relationship with the respondent. *See* Tex. Fam. Code § 71.0021(a)(1)(B), (b). Cane does not dispute that the associate judge was presented with evidence that Ramos has had a romantic or intimate relationship with Amaro and that Cane is or has been in a romantic or intimate relationship with him. *See id.* § 71.0021(b).

Second, Cane argues that the evidence below negated the applicability of Section 71.0021(a)(1)(B) because Ramos's testimony established that the events giving rise to the protective order were not "because of" a dating relationship. She relies on Ramos's testimony that "[t]his" was "not about a dating relationship, but about child custody."[6] But Cane presents this testimony out of context, and it does not support her argument.

Immediately before Ramos made the statement on which Cane relies, Cane argued with her about whether she had been harassing Cane to testify in a custody proceeding.[7] Cane then asked, "So was this custody, or because you think that it had something to do with a dating relationship?" It was in that context that Ramos said

---

[6]Cane's brief summarizes Ramos's testimony but incorrectly presents the summary as a direct quote. Ramos testified, "This was actually because of my son. This was due to custody. . . . This was for my—it was for my son, trying to get my son back safe."

[7]Immediately before this testimony, Ramos and Cane argued about whether Cane was still in a romantic relationship with Amaro.

9

that "this" was "due to custody" and her "trying to get [her] son back safe." It is unclear whether by "this," Ramos meant her actions related to the custody proceeding, her filing the protective-order application, or her own actions on March 23, 2025. But nothing in her words or their context suggests that she was referring to anything other than her own actions to "get [G.A.] back." That is, her testimony was not opining on why Cane acted as she did on March 23 and whether it was related to Ramos's prior romantic relationship with Amaro. Cane does not direct us to any other testimony or evidence in the record to support her argument.

Aside from this argument, Cane does not otherwise challenge the sufficiency of the evidence to establish dating violence under Section 71.0021(a)(1)(B), and she does not discuss the testimony and evidence that Ramos presented at the trial to support the protective order. We overrule Cane's second issue.

As for Cane's first issue, even if we accept that Title 4's definitions are jurisdictional,[8] because we have rejected her argument that Ramos's testimony negated

---

[8] We can determine whether a lower court had jurisdiction even in the absence of adequate briefing. *S.C. v. M.B.*, 650 S.W.3d 428, 449 (Tex. 2022) ("Courts always have the duty to ensure that subject-matter jurisdiction—their own and that of the lower courts—is secure."). Nevertheless, we note that Cane does not discuss why she believes the Title 4 definitions are jurisdictional, and she cites no authority that supports her argument that they are. *See* Tex. R. App. P. 38.1(i). She cites *E.L.T.*, but that case does not discuss protective orders. 93 S.W.3d at 374–77 (addressing, in appeal from termination of mother's parental rights, whether trial court erred by denying mother's motion for continuance, whether trial court could terminate her parental rights without determining her competency, and whether she received ineffective assistance). Additionally, she does not discuss the factors that courts

the existence of a "qualifying relationship," we also reject her argument that the absence of a qualifying relationship negated the trial court's jurisdiction.

## III. Cane's alleged defenses

In Cane's third issue, she argues that the trial court erred by refusing to recognize her statutory defense of third persons under Texas Penal Code Section 9.33 and Texas Family Code Section 71.004 when she acted to protect children from imminent harm. *See* Tex. Penal Code § 9.33 (providing circumstances under which a person is justified in using force against another to protect a third person); Tex. Fam. Code §§ 71.004(1) (providing that "family violence" as defined in that subsection does not include a defensive measure to protect oneself), 71.0021 (excluding from "dating violence" definition "a defensive measure to protect oneself"). Cane does not tell us where she raised these defenses below. *See* Tex. R. App. P. 33.1. Moreover, the only two cases that Cane cites in this part of her brief are *Ex parte Hughes* and *Walker v. State*, which, as noted above, do not exist. *See* Tex. R. App. P. 38.1(i). Further, Cane does not explain how Section 9.33 applies in the protective-order context. She argues in one sentence that "[t]he Family Code incorporates the Penal Code's justification defenses into its definition of 'family violence,'" but she cites only Section 71.004(3)'s incorporation of "dating violence," the definition of which does not mention defense of others. *See* Tex. Fam. Code §§ 71.004(3), 71.0021.

---

generally consider when determining whether a statute is jurisdictional. *See Tex. Windstorm Ins. Ass'n v. Pruski*, 689 S.W.3d 887, 891 (Tex. 2024).

Moreover, even accepting her interpretation of Section 71.004, she has not shown how it applies here. Cane contends that when Ramos followed Amaro on March 23, G.A. and Cane's two children were with Amaro in his Tahoe; that Ramos's vehicle "and additional cars in her family's convoy nearly flipped [the] Tahoe while attempting to force it to stop"; and that (unidentified) witnesses reported "that one occupant of [Ramos's] party brandished a firearm, causing [Amaro] to brake suddenly and exit onto Camp Bowie Boulevard to avoid the conflict or a collision to protect" G.A. and Cane's children. The only record references that she provides do not support these assertions. That is, she provides no references to any testimony or other evidence to support her assertion that the children were in danger and that she acted to protect them. *See* Tex. R. App. P. 38.1(g). We have no obligation to scour the record[9] to find support for Cane's appellate arguments.

Cane also cites Texas Penal Code Section 9.31, which provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force," and Family Code Section 71.004(3)'s exclusion of a defensive measure to protect oneself from the definition of "dating violence." *See* Tex. Penal Code § 9.31; Tex. Fam. Code § 71.004 (incorporating definition in Section

---

[9]Nevertheless, in addition to reviewing the record pages referenced by Cane, we also reviewed the pages of the record immediately before and after those pages, and we searched those record volumes for the words "Tahoe," "firearm," "gun," and "weapon." We found no testimony to support Cane's allegations.

71.0021). Cane does not explain why her actions were defensive measures to protect herself or immediately necessary, and she cites no part of the record to support such an argument. *See* Tex. R. App. P. 38.1(i).

Because Cane's arguments are unpreserved, inadequately briefed, or unsupported by the record, we overrule this issue. *See Cole*, 2026 WL 478940, at *4; *Amir-Sharif*, 246 S.W.3d at 270.

## IV. Exclusion of evidence and denying discovery

In Cane's fourth issue, she states that the trial court violated her due-process rights by excluding evidence, denying discovery,[10] and refusing to consider testimony at the motion-for-new-trial stage.[11] Under this issue, Cane makes several sub-arguments, which we address in turn.

---

[10]At no point in her brief does Cane tell us what discovery she believes she was entitled to, nor does she tell us how her not having access to it resulted in reversible error. *See* Tex. R. App. P. 38.1(i), 44.1. In her statement of facts, she does provide a page of a reporter's record volume where, she claims, she "raised ongoing procedural irregularities, including denial of discovery" to the trial court. That volume contains the transcript for the second new-trial hearing, but that page (and the pages immediately before and after) do not show that she raised any complaint about being denied discovery. We searched that volume for the word "discovery" and did not find any part of the record where she raised this issue. For these reasons, we overrule the part of her issue asserting that she was denied discovery. *See* Tex. R. App. P. 33.1, 38.1(g), (i).

[11]The index for the reporter's record volume for the third new-trial hearing indicates that Cane called Ramos to testify at that hearing. Cane does not tell us what other testimony she wanted to present at the new-trial hearings or where in the record the trial court prevented her from calling additional witnesses.

## A. Notice

First, Cane argues that she received insufficient notice of the protective-order trial setting, "learning of the proceeding only days before it occurred," which "deprived her of a meaningful opportunity to secure witnesses or prepare a defense." She asserts that "[t]he record shows no proof of proper service beyond conclusory statements from [Ramos's] counsel," but "[t]he court proceeded despite these defects." Cane does not tell us where in the record she raised lack of service, if she did so.

Moreover, the clerk's record contains an affidavit of service showing that Cane was served with the protective-order application on May 3, 2025, and the citation informed her that the matter had been set for a hearing on May 13. *See* Tex. Fam. Code § 82.041 (providing that notice of application for protective order must include the date, time, and place of hearing). Cane does not explain how this notice failed to comply with the requirements of the Family Code. *See id.*; *see also id.* § 84.001(a) (providing that "[o]n the filing of an application for a protective order, the court shall set a date and time for the hearing unless a later date is requested by the applicant" and that other than an exception not applicable here, "the court may not set a date later than the 14th day after the date the application is filed"); *id.* § 82.043 (providing that notice of protective-order application "must be served in the same manner as citation under the Texas Rules of Civil Procedure, except that service by publication is not authorized"); Tex. R. Civ. P. 21a. Cane does not cite any authority to support an

14

argument that she was entitled to more notice than she received or that the protective order must be reversed on this basis. *See* Tex. R. App. P. 38.1(i).

Moreover, if she had received less than forty-eight hours' notice of the hearing, she could have asked the trial court to reschedule it. *See* Tex. Fam. Code § 84.004. Cane does not cite to any part of the record reflecting that she informed the trial court that she had not received enough notice or requested a reset. Tex. R. App. P. 33.1. Additionally, Cane does not tell us what evidence or witnesses she was prevented from presenting due to insufficient notice or how or if she made a record of that evidence below. *See* Tex. R. App. P. 33.1, 44.1. Because this argument is not preserved, is inadequately briefed, or is not supported by the record, we overrule this part of Cane's fourth issue.

### B. Witness swearing in and testimony

Second, Cane argues that she was never sworn in to testify at the protective-order trial. Her entire argument under this section is as follows:

> Appellant was never placed under oath at the May 13 hearing and therefore had no official opportunity to present evidence or testimony.
>
> An argument by a self-represented litigant is not evidence.
>
> Tex. R. Civ. P. 266; *In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005).
>
> Despite this, the court relied on Appellee's narrative testimony—often unsworn hearsay—to issue the order. [Italics added.]

Regarding her argument that she was never placed under oath, Cane cites no record references in this part of her brief. *See* Tex. R. App. P. 38.1(g). Nevertheless,

15

we reviewed the beginning of the trial transcript and discovered that, as is often the case, the associate judge swore in all witnesses at that time. Specifically, at the start of trial, the associate judge ordered, "Will everybody that's going to testify please stand and raise your right hand." The judge then swore in those witnesses. If the record contains any indication that Cane was not or could not have been sworn at that time,[12] she does not tell us where in the record to find it. Moreover, she does not tell us if she informed the associate judge that she wished to testify. Additionally, she does not tell us what testimony she would have presented had she testified at the hearing or where she made a record of that testimony. *See* Tex. R. App. P. 33.1, 38.1(g); *Dutton v. Dutton*, 18 S.W.3d 849, 853 (Tex. App.—Eastland 2000, pet. denied) (noting that appellant "should have made the trial court aware, at some point, of the complaint he now presents on appeal"). To the extent that she complains that the trial court excluded other evidence at trial, she does not tell us what that evidence was, where in the record she offered it or the trial court excluded it, why the trial court abused its discretion by excluding it, or how she was harmed by its exclusion. *See* Tex. R. App. P. 33.1, 38.1(g) & (i), 44.1.[13]

---

[12]The record merely states, "(The witnesses are sworn.)" without identifying the witnesses by name.

[13]Moreover, Cane does not explain how her cited authority supports her arguments, and it is not apparent to this court that it does. *See* Tex. R. App. P. 38.1(i). Rule 266 provides that the plaintiff has the right to open and close except in certain circumstances and does not address a party's swearing in as a witness, and *K.A.F.*

16

Regarding the second part of the argument, Cane does not tell us what part of Ramos's testimony was hearsay,[14] does not tell us where in the record she objected to the testimony and obtained a ruling, does not explain why the testimony constituted hearsay, and does not cite any authority to support her argument that it was hearsay. *See* Tex. R. App. P. 33.1, 38.1(g). Thus, she has not preserved this argument or has inadequately briefed it.

### C. No trial transcript

Third, Cane argues that although she ordered and paid for the trial transcript, "multiple delays occurred." She says that "[t]he court reporter admitted on record that payments were mishandled and certain audio files required 're[-]creation'"[15] and that this "deprived [her] of timely access to the evidence necessary to prepare her post-trial motions." We interpret this argument as asserting that she did not receive the trial transcript in a timely manner and that the trial court therefore abused its discretion by

_____

involved the timeliness of a notice of appeal filed in an accelerated appeal. Tex. R. Civ. P. 266; *K.A.F.*, 160 S.W.3d at 924–28.

[14]Although Cane says that part of the testimony was "unsworn," she does not address the associate judge's swearing of witnesses at the start of the hearing.

[15]The single reporter's record page that Cane cites in this part of her brief does not support her assertion that "payments were mishandled" and that audio files had to be created again. Instead, it reflects that at the second new-trial hearing, the trial court and Cane had an exchange in which the trial court informed Cane that she had submitted her payment for the trial transcript to the wrong place (the clerk's office) and told her who she should pay instead (the court reporter who was present at trial or, alternatively, the court coordinator, who would pass it to the court reporter). Nothing about the exchange indicates that Cane's payment was mishandled by anyone involved in producing the transcript or that audio files needed to be recreated.

17

denying her motion for new trial. However, the only authority she cites in this section is *J.B.G.*, a case that does not exist. Moreover, she does not tell us what argument she would have made in her new-trial motions but was prevented from raising because she did not have the transcript. *See* Tex. R. App. P. 38.1(i). We conclude that her inadequate briefing presents nothing for review, and we overrule this part of her fourth issue.

### D. Production of exhibits

Next, Cane argues that at the second new-trial hearing, the trial court refused to review her exhibits and instead "compelled [her] to hand over her binder of exhibits—including personal notes, photographs, and other materials—to opposing counsel" and that "[t]his forced disclosure" violated Texas Rule of Evidence 403[16] and Texas Rule of Civil Procedure 192.5.[17] She further contends that "[s]uch compelled production of evidence outside discovery procedures chills the right to prepare a defense."

---

[16]Rule 403 provides that a trial court may exclude evidence if the probative value of the evidence "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Cane does not explain how this rule relates to her showing her exhibits to opposing counsel. Further, as we explain, she did not preserve this objection.

[17]Cane did not object at the hearing that her binder contained work product. *See* Tex. R. Civ. P. 192.5 (governing work product); Tex. R. App. P. 33.1.

18

Generally, a party should give the opposing party the opportunity to review an exhibit before its admission. *See, e.g, Walp v. Williams*, 330 S.W.3d 404, 411 (Tex. App.—Fort Worth 2010, no pet.) (Dauphinot, J., concurring) (noting that "generally, a party wishing to place a document into evidence should produce the document and in some way signify that he is offering it into evidence, allow the opposing party to inspect the evidence and make any objections to its admission, have the evidence marked as an exhibit by the court reporter, and hand it to the trial judge"). Moreover, the record reference that Cane provides to support her argument actually refutes it. The trial court informed the parties that it was continuing the hearing and asked if they would be available on a date the next month. The court then had this exchange with Cane about providing her proposed exhibits to opposing counsel before that date:

[THE COURT] And I do -- I am going to order you to turn over copies of whatever you want to present at trial to [Ramos's attorney] by --

[CANE]: Does she want my binder now?

THE COURT: Yeah. Is that an extra copy?

[CANE]: I have extra copies of everything. I came prepared, fully, to --

THE COURT: Okay.

[CANE]: -- the Court today.

THE COURT: Will you hand that to [Ramos's attorney] now --

[CANE]: Yes, ma'am.

19

This exchange shows that Cane had the option of providing copies to Ramos's attorney after the hearing, but she *volunteered* to provide her exhibit binder at that time. *See* Tex. R. App. P. 33.1. We overrule this part of Cane's fourth issue.

### E. "Silencing" Cane

Next, in a section titled, "Unequal Treatment and Silencing of the Appellant," Cane argues as follows:

> Throughout the hearings, the court repeatedly curtailed Appellant's ability to speak, threatening contempt for even minimal clarification.
>
> By contrast, Appellee was allowed to narrate at length without restraint.
>
> When Appellant attempted to question the legal basis for standing and conclusions of law, [the trial court] rescheduled the hearing. (RR July 23, p. 23 ln. 12–19).
>
> This one-sided treatment deprived Appellant of the fair balance required by Tex. R. Evid. 611(a).

Other than Texas Rule of Evidence 611, Cane cites no authority. *See* Tex. R. App. P. 38.1. Further, she cites no part of the record to support her argument that the trial court "curtailed [her] ability to speak," and the only record cite she provides to support her argument that the trial court rescheduled the hearing when Appellant "attempted to question the legal basis for standing and conclusions of law" does not support her arguments. That part of the record reflects that after some discussion about why Cane did not yet have a trial transcript from the court reporter, the trial court announced that it was continuing the hearing, proposed a hearing date for the next month, and asked Cane if she would be available on that date.

[CANE]: I need to look at my calendar.

THE COURT: All right. Please look at your calendar.

[CANE]: I really just want to ask you, like, the findings -- like, the facts and conclusion of law. What is the qualifying relationship?

THE COURT: Ma'am --

[CANE]: What have I done wrong?

THE COURT: Ma'am, I need you to let me know if you can be here on [the proposed date]. That's the question before you.

And, now, if you want to have the hearing right now without the transcripts, we can have a hearing right now without the transcripts. If you want to stop the hearing and have time to have the transcripts, we will have the hearing [on the proposed date].

Cane then confirmed that she wanted to obtain the trial transcript and that she was available on the proposed date.

This exchange shows only that Cane had attempted to request oral findings of fact and conclusions of law before the trial court had ruled on her postjudgment motions and while the trial court was attempting to schedule a date to continue the hearing to give her the opportunity to obtain the transcript to support her motions. It does not show that Cane suffered unequal treatment or that the trial court "silenced" her. Moreover, Cane does not explain how under Rule 611, which governs "the mode and order of examining witnesses and presenting evidence," the trial court was required to grant an oral request for findings and conclusions in the middle of a hearing. *See* Tex. R. Evid. 611. As noted, she does not cite anywhere else in the record

21

where she contends the trial court violated Rule 611. Because this part of her issue is not supported by the record and is inadequately briefed, we overrule it.

## F. "Refusal to [c]onsider [e]vidence or [p]rovide [f]indings"

Cane next argues that the trial court denied her postjudgment motions but failed "to make findings of fact and conclusions of law," which "frustrates appellate review and itself constitutes error under Tex. R. Civ. P. 296–297." Cane fails to provide appropriate citations to the record and makes no attempt to explain how she satisfied the requirements for obtaining findings and conclusions. First, Cane does not tell us where in her postjudgment filings she requested in writing that the trial court make findings and conclusions. *See* Tex. R. Civ. P. 296. With no help from Cane, however, we reviewed the clerk's record index and found that she did file a request. However, assuming the request was filed timely, *see* Tex. R. Civ. P. 296, the index does not reveal that she filed a notice of past-due findings and conclusions, and Cane has not told us where any such notice may be found.[18] *See* Tex. R. Civ. P. 297; Tex. R. App. P. 38.1(g). Moreover, Cane has not explained how the trial court's failure to issue findings and conclusions prevented her from presenting her case to this court. *See* Tex. R. App. P. 44.1; *In re J.R.*, No. 02-23-00071-CV, 2024 WL 191211, at *10 (Tex. App.—Fort Worth Jan. 18, 2024, pet. denied). Accordingly, Cane has not

---

[18]As noted, Cane's trial court filings were voluminous. Although we have no duty to search the record on Cane's behalf, we searched the clerk's record for the word "findings" and did not find anything that we could construe as a notice of past-due findings and conclusions.

preserved this complaint or has failed to adequately brief it on appeal. *See* Tex. R. App. P. 38.1(g), (i); *Guillory v. Boykins*, 442 S.W.3d 682, 694 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Cane also states that she "filed multiple sworn motions—including motions to vacate and for a new trial—raising jurisdictional and evidentiary defects. Yet, without any further briefing or findings, the court denied relief." She provides no further elaboration of this argument. To the extent that she argues that the trial court refused to consider her evidence, or if she means that her evidence negated Ramos's entitlement to a protective order or established that the trial court abused its discretion by denying her postjudgment motions, she does not tell us what evidence she means, when she presented it to the trial court, or why it should have produced a different outcome in the trial court. *See* Tex. R. App. P. 38.1(g), (i). To the extent she refers to the jurisdictional argument raised under her first issue, we have already rejected that argument. We overrule this part of her issue.

### G. "Cumulative Effect"

Finally, Cane argues that "[b]ecause the record demonstrates pervasive procedural unfairness, this [c]ourt should reverse and vacate the protective order as constitutionally invalid." Having overruled Cane's other arguments under this issue, we cannot say that she has shown a "cumulative effect" of "pervasive procedural unfairness" requiring reversal. *See Anderson v. G & S Auto of Fort Worth VI, LLC*, No. 02-25-00063-CV, 2025 WL 3039141, at *8 (Tex. App.—Fort Worth Oct. 30,

23

2025, pet. denied); *Haskett v. Butts*, 83 S.W.3d 213, 221 (Tex. App.—Waco 2002, pet. denied). We overrule the remainder of Cane's fourth issue.

## V. Admission of Ramos's evidence

In Cane's fifth issue, she contends that the trial court "abused its discretion by admitting unauthenticated exhibits[19] and proceeding after acknowledging uncertainty in the statute and lack of supporting case law." She makes multiple sub-arguments.

First, she argues that the trial court abused its discretion by acknowledging uncertainty regarding its jurisdiction but nevertheless proceeding. She refers us to a moment in the first new-trial hearing at which the trial court asked Ramos's attorney to supply authority for issuing a protective order against a respondent with whom the applicant has not had a dating relationship. Ramos's attorney told the trial court that Cane and Amaro were in a dating relationship and that Cane had judicially admitted that fact.[20] That response appeared to address the trial court's concern.

Citing *Clements v. Haskovec*, Cane argues, "When a court admits doubt regarding its power yet continues to act, it necessarily abuses its discretion." *Clements* does not support that proposition, either at the pinpoint page Cane provides or elsewhere in

---

[19]Her arguments under this issue do not tell us what unauthenticated exhibits were admitted below, do not tell us where she objected to them, and do not explain how she was harmed by their admission. *See* Tex. R. App. P. 33.1, 38.1(g), 38.1(i), 44.1.

[20]It was during this discussion that Cane provided the trial court with the cite for *Walker v. State*, and the trial court informed her that the cite was not correct.

24

the opinion. *See, e.g.*, 251 S.W.3d at 83 (discussing, on pinpoint page relied on by Cane, evidence and objections raised at hearing and addressing whether appeal was moot). Cane cites no authority that supports her argument that if a trial court asks a party to provide the legal basis on which the party seeks relief, the trial court abuses its discretion by proceeding with the hearing. *See* Tex. R. App. P. 38.1(i). She has therefore waived this issue by inadequately briefing it.

Next, Cane re-urges some of the same arguments that we have addressed regarding the application of Section 71.0021. We do not re-address them here. Then, Cane argues that the trial court "expanded state power beyond the statute's text." The only authority she cites for her argument is *Ex parte Hughes*, a non-existent case. Because this argument is inadequately briefed, *see* Tex. R. App. P. 38.1(i), and appears to be a reassertion of arguments we have already rejected, we overrule this part of her issue.

Finally, she argues that the record shows that the trial court made arbitrary decisions when it "[a]cknowledged uncertainty about statutory standing," "[r]equested authority that was never produced," "[r]efused to hear sworn testimony from [her]," "[r]elied on unverified allegations," and "[e]ntered a final order despite admitted doubt." She contends that "[t]hese acts demonstrate arbitrary decision-making outside of legal principles." To the extent these assertions are ones that we have already considered, we reject them. To the extent Cane was attempting to raise different complaints, they present nothing for review because they are unsupported by record

references, relevant authority, or even enough detail for us to guess what she means. Accordingly, she has waived them by inadequate briefing. We overrule the remainder of Cane's fifth issue.

## VI. Protective order breadth

In Cane's sixth and final issue, she argues that the protective order is unconstitutionally overbroad and restricts her liberty and right to travel. She does not tell us where in the record she raised this objection below.[21] *See* Tex. R. App. P. 33.1; *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal."). Furthermore, she does not cite any part of the record to support her factual allegations under this issue, including, for example, that the order prevents her from "public corridors that [she] must use to reach her university and employment." *See* Tex. R. App. P. 38.1(g). For these reasons, we overrule Cane's sixth issue.[22]

---

[21]We nevertheless searched the 92-pages of Cane's timely postjudgment filings for the words "overbroad," "travel," "liberty," and "constitution," and we did not find any instance of Cane's raising this complaint in those filings.

[22]Nothing in this opinion prevents Cane from filing a motion to modify the protective order, *see* Tex. Fam. Code § 87.001; *J.A.T. v. C.S.T.*, 641 S.W.3d 596, 617 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (providing that even after resolution of an appeal from a protective order, a trial court has jurisdiction under Section 87.001 to modify a protective order while the order remains in effect), or from asking the trial court to review whether there is a continuing need for the order, *see* Tex. Fam. Code § 85.025(b) (providing that, not earlier than the first anniversary of the date on which a protective order was rendered, the person who is the subject of the order may file a motion asking that the court review the order and determine whether there is a continuing need for it).

26

## Conclusion

Having overruled Cane's six issues, we affirm the trial court's order.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  April 30, 2026